IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT MILLEDGEVILLE,

### NOVEMBER TERM, 1860.

Present—JOSEPH H. LUMPKIN,  
　　　　RICHARD F. LYON,　} Judges.  
　　　　CHARLES J. JENKINS,

---

## HUGHES *et al. vs.* ALLEN.

John W. Allen, by the tenth item of his Will, directed certain slaves to be manumitted, which clause was declared void. By the twelfth item of his Will, he "desires all the remaining portion of his property, consisting of household and kitchen furniture, crop, provisions, cotton, stock of all kinds, lands, and the following named negroes to be sold, to-wit: Jim, Vinah, Dave, Katy, Aaron, Jerry, Moses, Jim, Mike, and all other property, belonging to me and not heretofore specified, and the proceeds of such sale to be appropriated to the payment of all my debts; and if there should be anything remaining—after all my debts are paid—it shall belong to the children of Theophilus D. Boothe, in the manner specified in the eighth item of this Will." *Held*, That the negroes specified in the tenth item of the testator's Will—the same being void by the Laws of this State—belong to the heirs at Law of John W. Allen, the testator, and not to the children of Theophilus D. Boothe, as residuary legatees under the twelfth item of the Will.

Trover, in Wilkinson Superior Court. Question brought up by agreement without any decision in the Court below.

---

**LAPSED OR VOID LEGACY.** "When a legacy fails either by lapse or because it is void at law, it falls into the general residuum and passes to residuary legatees, and not to the next of kin. This is the general rule, and there is nothing in that case constituting it an exception thereto." Word *v.* Mitchell, 32 Ga. 624. "A legacy failing either by lapse or because void at law, falls into the residuum and passes to the residuary legatee, and not to the next of kin, where there is no contrary intention expressed in the will: Word *v.* Mitchell, 32 Ga. 623. **The residuary legatees who were living at the time of the testator's death and named in his will, and the issue of those named therein as residuary legatees who were dead, take under the will as provided therein, to the exclusion**

Daniel G. Hughes, as executor of John W. Allen, deceased, brought an action of trover, in the Superior Court of Wilkinson county, against Willis Allen, administrator of John W. Allen, deceased, to recover damages for the alleged conversion of three hundred dollars in money, and eight negro slaves, with their annual hire.

To this action of trover, the defendant filed a plea of the "general issue" and, also, the following, to wit:

"That on the 27th day of February, 1856, John W. Allen, then of the county of Twiggs, and State of Georgia, made his last will and testament, in which, among other things, he undertook to manumit certain slaves, to wit: Eliza, a woman, about thirty years of age, and her children—Glaucus, a boy, about eleven years of age; Penelope, a girl, about eight years old; Otis, a boy, about five years old, and Sanford, a boy, about seven months old; and gave to said woman, Eliza, her bed and bedclothes, and trunk, and two hundred dollars in cash, and directed his executors to transport her and her children to any place where she might desire to go, and also appropriated a sum of money sufficient to remove them. And in the twelfth item of his said will, he bequeathed as follows, to wit: "I desire the remaining portion of my property, consisting of household and kitchen furniture, crop of provisions, cotton, stock of all kinds, land, and the following named negroes to be sold, to wit: Tom, Lem, Daniel, Dow, Caty, Aaron, Jerry, Moses, Jim, Mike, and all other property belonging to me, not heretofore specified, and the proceeds of such sale to be appropriated to all my debts, and if there should be anything remaining after all my debts, it shall belong to the children of Theophilus D. Booth, in the manner specified in the eighth item of this will." And, further, in the thirteenth item of said will, the said John W. Allen, deceased, declared: "That, if any one, specified in this will, should attempt to prevent the same from going into execution and distribution, as specified in these several items, then such an one shall not receive his distributive share, so apportioned, but the same shall be a common dividend to the others who have been mentioned in the same." For the better consideration of this plea, this defendant sets out a copy of the will, which is as follows, to wit:

"In the name of God, amen. I, John W. Allen, of the county of Twiggs, and State of Georgia, being of sound and

of his heirs-at-law. There are no words in this will which so narrow the title of the residuary legatees as to exclude them from taking the lapsed legacies, as in the case of Hughes v. Allen, 31 Georgia Reports, 481." Thweatt v. Redd, 50 Ga. 191. To same extent, see Williams v. Whittle, 50 Ga. 525. And see Silcox v. Nelson, 24 Ga. 84.

disposing mind and memory, and being desirous to settle my worldly affairs while I have strength to do so, do make this my last will and testament, hereby revoking all wills by me heretofore made. And first, I commit my soul to God, who gave it, and my body I desire to be buried in the family burial ground at Cool Spring Church, in Wilkinson county, and my wordly estate, I dispose of as follows:

"First. I desire and direct that my plantation shall be kept in operation for the present year, together with all my stock and farming tools, etc.; after the expiration of which time, I desire that all my just debts be paid, without delay, to my creditors, by my executors, hereinafter mentioned, as there is no cause for further delay in payment of the same.

"Second. I give and devise to my beloved brother, William Allen, the following negroes, to wit: Red, a man, forty-two years old; Gracy, a woman, about thirty years old; George, a boy, about eleven years old; Louisa, a girl, about three and a half years old; Jane, a girl, about two years old; Amy, a child, about two months old.

"Third. I give and devise to my beloved brother, Willis Allen, the following negroes, to wit: Big Jerry, a man about thirty-one years old; Cato, a boy about twenty years old, and the following land, to wit: The settlement known as the Paget place; the settlement known as the Mrs. Rouse place, and one hundred acres of lot No. 72, making, in all, about three hundred and fifty acres.

"Fourth. I give and devise to Miss Sarah Bryan two hundred dollars in cash.

"Fifth. I give and devise to my beloved uncle, John Rogers, one thousand dollars in cash.

"Sixth. I give and devise to my beloved sister, Polly Meridith, wife of Wyatt Meredith, five dollars in cash.

"Seventh. I give and devise to John McCullers, whose name was changed by the Legislature of this State to John Allen, five dollars in cash.

"Eighth. I give to the children of my worthy friend, Theophilus D. Booth, in trust, the following negroes, to wit: Sarah, a woman about thirty years old; her son Henry, about thirteen years old; Georgia Anna, a girl about eleven years old; Andrew, a boy about five years old; Billy, a boy about nine years old; Ellen, a girl about six years old; Clifford, a girl about three years old; and if any of the children

of the above-mentioned Theophilus D. Booth shall die, leaving no child, the offspring of his or her body, then his or her distributive share to be equally divided among the remaining brothers and sisters of such child; and I hereby appoint my worthy friend, James R. Coombs, trustee for said children and said property. Also, the following negroes, to wit: I give, in the manner above mentioned, in the above clause, Jack, a boy about twenty years old; Zadock, a boy eighteen years old; Josephine, a girl about sixteen years old; Luke, a boy about five years old; Tom, a boy about thirteen years old; Rachael, a girl about eleven years old; David Crockett, a boy about two years old; all the above-mentioned negroes, together with the increase of the females, being given to said Theophilus D. Booth's children for their sole and separate use, and not subject to the debts of any person whatsoever.

"Ninth. I give unto the children of my worthy friend, Daniel G. Hughes, in trust, the following negroes, to wit: Ann, a woman about twenty-six years old, and her children; Allen, about six years old, as well as the increase of Ann; said negroes not to be subject to the debts of any person whatsoever; and I hereby appoint Daniel G. Hughes trustee for said children and said property.

"Tenth. I hereby manumit and forever release from involuntary servitude the following slaves, to wit: Eliza, a woman about thirty-five years old; Penelope, a girl about eight years old; Otis, a boy about five years old; Sanford, a boy about seven months old; allowing her to keep her bed and bedclothes, and trunk, which are strictly hers; and I do, moreover, give to her, for her use, two hundred dollars in cash, and appropriate a sum of money sufficient from my estate to be used by my executors, hereinafter named, to carry or transport her to any place wheresoever she may wish to go, together with her children.

"Eleventh. I give the following negroes, in trust, to Mary C. Booth: Polly, a girl about thirteen years old; Sylvia, a woman about fifty years old; Peter, a boy about ten years; as also the increase of the females mentioned in this item; said negroes to be the sole and separate property, and for the sole and separate use, of the said Mary C. Booth, and not subject to the debts of any future husband or other person whatsoever; and if the said Mary C. Booth should die, leaving no child, then said negroes shall be equally divided be-

tween her brothers and sisters; and I do hereby appoint my worthy friend, James R. Coombs, trustee for said Mary C. Booth.

"Twelfth. I desire the remaining portion of my property, consisting of household and kitchen furniture, crop of provisions, cotton, stock of all kinds, land, etc., and the following named negroes to be sold, to wit: Levi, Daniel, Tom, Caty, Aaron, Jerry, Moses, Jim, Mike, *and all other property belonging to me not heretofore specified,* and the proceeds of such sale to be appropriated to the payment of all my debts, and if there should be anything remaining after all my debts are paid, it shall belong to the children of Theophilus D. Booth, in the manner specified in the eighth item of this will.

"Thirteenth. If any one specified in this will should attempt to prevent the same from going into execution and distribution, as specified by these several items, then such an one shall not receive his distributive share, so apportioned, but the same shall be a common dividend to the others who have been mentioned in the same.

"Fourteenth. I desire that my faithful old servant, Pleasant, shall go where she pleases, and that she shall not belong to any one, and that the sum of one hundred dollars shall be reserved for her use and support.

"Fifteenth. I give and devise unto Daniel G. Hughes my watch, to be his forever.

"Sixteenth. I constitute and appoint my beloved friends, James R. Coombs and Daniel G. Hughes, executors of this my last will and testament."

The said John W. Allen having died, his said will was duly presented to the Ordinary of said county of Twiggs, and, being duly proven, was ordered to be recorded by the judgment of said Ordinary, except so much and such parts thereof as related to the manumission of the slaves, as heretofore set forth; and in relation to said negro slaves so attempted to be manumitted as herein specified and set forth, an intestacy was declared by a like judgment of the Ordinary aforesaid; and administration was taken out by the defendants in this suit, for the settlement of the estate of the said John W. Allen, not disposed of in and by his said will, including the slaves so attempted to be manumitted as aforesaid, which slaves were, by said defendant, taken into possession, and sold by an order of the Ordinary aforesaid, and the proceeds

distributed to the heirs at law of the said John W. Allen, in due course of administration. Afterwards, the plaintiff claiming the same, in behalf of the residuary legatees under the will aforesaid of the said John W. Allen, more particularly under the 12th item hereinbefore stated, instituted said action of trover (to which this plea is now filed) against the defendant to recover the said negroes so attempted to be manumitted as hereinbefore stated, with their issue. Now this defendant, for plea to said action (the premises considered), denies that the plaintiff, in behalf of said residuary legatees under said will, have any right, title or claim to the said negro slaves and their issue, but, on the contrary, in fact, says, that as to all of said slaves, the said John W. Allen, upon any true construction of said will, died intestate; and said slaves, with their increase, and all money and property in said will given to effect their manumission, rightfully descended, and belongs to the heirs at law of the said John W. Allen, deceased; all of which facts this defendant is ready to verify. Wherefore, he prays, etc.

To this plea the plaintiff demurred, and the parties agreed that all the facts were correctly set forth in the plea, with this addition, to wit: "That all the orders for letters of administration, order for sale, and the sale of the property by the administrator, as stated in the plea, were granted, and took place whilst the validity of said will was in litigation, and pending, and undetermined in the Courts of Georgia." The parties further agreed, in writing, that as his Honor, Iverson L. Harris, has been so connected, professionally, with the question involved, as to render him unwilling to hear and determine it, that said question, to wit: Whether, by said will of the said John W. Allen, the said negroes and other property mentioned in the tenth item of said will, having failed to pass by virtue of said tenth item, go to the next of kin of the deceased, or go to the children of Theophilus D. Booth, as residuary legatees, by virtue of said will, shall go and be carried up to the next Supreme Court, at its November Term, 1860, at Milledgeville, as a case made to be by said Court heard on argument, and then and there, by said Supreme Court, finally decided and determined.

Thus this case comes before the Court for its adjudication.

BAILEY & DEGRAFFENREID, for plaintiff in error.

E. A. & J. A. NISBET, for defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

The tenth item of John Allen's will, manumitting certain slaves therein named, having been declared void, the only question in this case is, whether the said slaves therein specified go to Booth's children, as residuary legatees under the twelfth item of the will, or to the heirs at law of the testator?

In the main, we fully recognize the positions assumed by counsel for the residuary legatees—fortified, as they are, by approved English and American authorities, and enforced, as they have been, in the argument before this Court, with signal ability. The following propositions we hold to be true: That when the general legatee is residuary legatee, he is entitled, not only to what remains after the payment of debts and legacies, but also to whatever may, by lapse, invalid disposition, or other casualty, fall into the residue after the date and making of the will. *Roper on Legacies,* 1673; 1 *Ves. Sen.* 320; *Russel & M.* 258. That a residuary clause passes a lapsed legacy, and that which is intended to be the subject of bounty to another. And this rule laid down by Lord Collinham (*Roper,* 1682), is founded upon the idea, not that it effects, in specie, what the testator intended, but because the residuary clause is understood to be intended to embrace anything, not otherwise effectually given. Because, as Sir Wm. Grant expresses it, the testator is supposed to give it away from the residuary legatee, only for the sake of the particular legatee, or, as it is sometimes expressed, the particular intent of the testator is made to give way to the general intent, to effectuate the plain purpose of the testator—not to die intestate as to anything belonging to him.

In *Kennel vs. Abbott* (4 *Ves.* 303), a legacy lapsed. The residuary clause was: "And as to the residuum of the purchase money arising from the sale of my copy-hold estates, household goods and furniture, and all the rest, residue and remainder of moneys, sureties for money, personal estate and effects, whatsoever and wheresoever, that I should die possessed of, interested in or entitled to, or which I have power to dispose of, by will, I give to Billy Kennel, subject to his debts and funeral expenses." It was held that this

clause carried a lapsed legacy. The same point was held in *Brown vs. Higgs* (*ibid,* 1708.)

In *Cambridge vs. Bass* (8 *vs.* 12), the testator gave and bequeathed all the rest and residue of his property and effects whatever, in money or the public funds, or other securities of any sort or kind, whatsoever, to be divided," etc. This clause was held to pass a lapsed legacy.

In *Bland vs. Lamb* (*Walker's Rep.* 399), the testator, after disposing of his large estate by will, closed by saying: "Anything I have forgot, I leave at the disposal of Mrs. Bland, of Isleworth. All my wines are hers." In a codicil, he added: "I may have forgotten many things, such as money due me from Government; and if such there is, it is to be thrown into a lump, for the benefit of the legatees, to be paid to them in proportion." After this, two days from the date of the codicil, testator died, and also his aunt Bland a few hours after, who left him, by her will, over $100,000. The suit was to have this distributed, under the residuary clause of his will, as "things forgot," when it was notorious he could not have forgotten it, for it did not belong to him at the time of his death. Hence, counsel argued that testator could have had no intention to include it in the residuary clause. But the Vice-Chancellor, and afterwards the Chancellor, on appeal, decided that it passed, under the residuary clause; that it takes very special words, to take any residue out of the residuary clause of a will; that particular intention is not to govern.

The same doctrine is maintained in *Boggs vs. Morgan,* 16 *Cond. Eng. Eq. Reports,* 289, *and in Dawson vs. Gascon,* 15 *id.,* 14 *and* 2 *Keene;* and the American Courts have followed these authorities. *Breslanport vs. Beauskett,* 1 *Richardson Eq. Rep.* 465; *Taylor vs. Lucas,* 4 *Hawkes,* 215; *Banks vs. Phelan,* 4 *Barbour, Supreme Court Reports,* 80; *King vs. Woodhul,* 3 *Ed. Ch. Rep.* 79; 6 *Paige's Rep.* 600, *and* 18 *Geo. Rep.* 139.

These are the leading cases cited by counsel for the plaintiffs in error; and the principle deduced from them is: That true, Allen, by his will, manifests a clear intention to dispose of all his property; that this intent would have been effectuated, had it been legal to manumit slaves; but that this particular intent to give a portion of his slaves freedom, having failed, and they falling into the general estate, and not

being wanted to pay debts, became subject to the residuary clause, as "things remaining," and go to Booth's children. While we have no controversy with the authorities produced, nor with the general reasoning based upon them, we can not subscribe to the conclusion to which counsel come. We think an important exception has been overlooked, and which must settle this case. It is this: That a testator may, by the terms of the bequest, so narrow the title of the residuary legatees as to exclude them from lapsed and void legacies; and that the testator has, in this case, so excluded the children of Booth.

We apprehend this general principle will not be controverted. *Williams on Ex'rs*, 1043; 3 *P. Williams*, 40; *Ambler*, 577; 5 *Ves.* 149; 12 *Ves.* 497; 2 *Rop. on Leg., 3 Ed.*, 587; *Williams on Ex'rs*, 1045; *Teller*, 343; 1 *P. Williams*, 302; 2 *Rop. on Leg., 3 Ed.* 589; 1 *Dev. & Batt.* 492; 18 *Ga. Rep.* 130; 5 *Hare*, 250 (*Pendleton vs. Blount*), 5 *M. & Cr.* 62.

By reference to the twelfth item of Mr. Allen's will, it will be seen that he expressly excludes from the residuum property belonging to him and *theretofore specified* in his will. The slaves in dispute, and included in the tenth item of the will, are clearly excluded from the residuum; and we have searched carefully for any case, either cited by counsel or in the libraries, and we can find none which meets this case. In many of the wills whose clauses I have copied, they might seem the same upon a casual inspection; but the difference is fundamental. A testator might say, "all the rest of my property not heretofore disposed of," etc., and a void bequest would pass under it. And why? Because an ineffectual disposition is no disposition. But the term, "not heretofore *specified,*" is a term of identification only, and applies as well to a lapsed or void legacy as to a valid one; and that is this case; and we repeat, we can find no parallel to it. Certainly, counsel have furnished none.

Believing that the rule has been stretched quite far enough in this direction, we are not disposed to make a precedent—extending it one step further.

Consequently, our judgment is, that the property specified in the tenth item of testator's will, belongs to the heirs at law of John W. Allen, and not to the children of Theophilus D. Allen, as residuary legatees, under the twelfth item of testator's will.

## JUDGMENT.

Whereupon, it is so adjudged that the negroes *specified* in the emancipation clause of the testator's will, do not fall into the residuum under the twelfth item of the will, but vest in the heirs at law.