## GRAY ET AL. *v.* BAILEY ET AL.

WILL.—*Residuary Legatees.*—*Lapsed and Adeemed Legacy.*—Where five daughters were residuary legatees of the personal estate of their father, and one of them died, and three of the others gave receipts to their father for a sum of money in full of all their interest in the estate; the remaining daughter, the one legacy having lapsed and the three others having been thus adeemed in the lifetime of the testator, was entitled to the residue of the personal estate.

APPEAL from the Jefferson Common Pleas.

WORDEN, J.—Amanda P. Bailey, who was a daughter of Joshua Tull, deceased, hereinafter mentioned, together with her husband, Howard Bailey, filed her petition in the court below against the heirs, legatees, and executor of the last will of said Joshua Tull, praying that the residue of the personal estate of said Joshua, in the hands of the executor for distribution, after paying the debts, etc., be paid over to her, and on the hearing of the cause it was ordered accordingly. The defendants, the heirs, etc., appeal.

The following are the facts in the case as disclosed by the evidence: On March 5th, 1849, the said Joshua Tull made his last will and testament, devising his real estate to his sons, and his personalty to his daughters. The following clause in the will is the only one that needs to be specially considered, viz.:

"In the fifth place, I give and bequeath unto my five daughters, Eleanor M. Tull, Jane Gray Wiley, Matilda Ann Tull, Elizabeth E. Gray, Amanda P. Bailey, all and singular my personal property of every kind. My will is, that my daughters, in the distribution of what I have given them, all be made equal from first to last."

Matilda Ann died without issue before the death of the testator. The testator died September 30th, 1865. Before his death, he advanced to his three daughters, Elizabeth, Eleanor, and Jane, each the sum of two hundred and fifty dollars, and took from each a receipt therefor. The receipts

were all substantially alike, bearing the same date. We copy one as sufficient to show the substance of all:

"Received of Joshua Tull, Sr., two hundred and fifty dollars, July 17th, 1854, it being in full of all my interest in the estate of Joshua Tull, Sr., both real estate and personal property.

[SIGNED.]　　　　　　　　　　"ELEANOR M. TULL."

It was proved by John Chambers, the executor, that the testator, after the execution of the will, and a short time before his death, told the witness that he wanted to make all his children equal; that he had given to Elizabeth Gray, Eleanor M. Tull, and Jane Wiley two hundred and fifty dollars each, which was their share of his estate, and that he wanted him, the witness, to pay to the plaintiff, Amanda P. Bailey, two hundred and fifty dollars, to make her equal with the others, and to give the balance to his (the testator's) wife, now deceased. He also said he had offered to give Amanda the same amount which he had given to the other daughters, but she said she did not wish to take it, as her husband was reckless and might squander it, and she would rather let it remain where it was.

The executor has paid to said Amanda the sum of two hundred and fifty dollars, and there remained, after paying debts and costs, about one hundred and seventy-five dollars.

The question arises whether upon the facts shown, the appellee, Amanda P. Bailey, was entitled to the residue of the money. We are of opinion that she was, and, consequently, that no error was committed by the court below in awarding it to her.

Upon the death of Matilda Ann without issue, before the death of the testator, the bequest to her lapsed. 1 Jarman Wills, 4 Am. ed., 310–11, and note; 2 G. & H. 554, sec. 13. The bequest to the five daughters was substantially a residuary bequest. They were substantially residuary legatees, as they were to take all the personal property of the testator of every kind, be it much or little, after the pay-

ment of debts. The personal property was the primary fund for the payment of debts, and the legatees could only take what might be left after the debts of the testator were paid.

The share which otherwise would have gone to Matilda Ann, by her death without issue before the death of the testator, lapsed into the residuum, and would have gone to the remaining four legatees had nothing occurred to prevent either from taking her share thereof. 1 Jarman Wills 312, and note; 2 Redfield Wills 116, 117, 126; *Prescott* v. *Prescott*, 7 Met: 141.

The receipt, by each of three daughters, of the sum of two hundred and fifty dollars from the testator in his life-time, and the execution by them respectively of the receipts therefor, operate as a full and complete satisfaction or ademption of their respective legacies. This is not left to implication, or presumption but is clearly and unequivo-cally expressed on the face of the receipts. Herein the case differs from *Clendening* v. *Clymer*, 17 Ind. 155, cited by counsel for the appellants. In that case, it was held that the doctrine of presumed or constructive ademption, such as arises from an advancement to a child by a parent, or one standing *in loco parentis*, of a sum equal to the leg-acy, has no application to residuary legacies. In the case before us nothing is left to presumption. The papers signed by the three daughters speak in clear and decisive terms, and show that they received the money in full of their interest in the estate.

One of the legacies having thus lapsed, and the three others having been thus adeemed in the lifetime of the testator, it follows that, under the will, Amanda, the only other one of the five daughters named in the will, is entitled to the residue of the personal estate. It is objected that this is unjust and improper, as contradicting the terms of the will, which expresses the intention of the testator that the several daughters should " all be made equal from first to last." We are of opinion, however, that it is eminently just and proper that Amanda should receive such resi-

due. The provision alluded to in the will has reference to what the testator had bequeathed his daughters by the will, and would seem to have no other effect than to declare that the property thus bequeathed should be distributed equally among them.

By the terms of the will the property was to be shared equally between the daughters. But in 1854, when the legacies of the three daughters were adeemed, it was uncertain how long the testator would live, or how much personal property, if any, he would have at the time of his death. The three daughters preferred to take each the sum of two hundred and fifty dollars at that time, rather than await the death of the testator and then take their respective shares under the will. They then took a certainty for an uncertainty, inasmuch as the testator might have died without personal property. Had he died without personal property, or without enough to make the share of Amanda equal to what had been thus advanced to each of the other three, she would have had no remedy. The daughters who chose to take their shares in the lifetime of the testator, in the manner above stated, could not have been compelled to contribute to her any part of that which they thus received; nor can they, on the other hand, claim any of the share that thus comes to her under the will, although it exceeds the amount which they each received. They each made their election to take the two hundred and fifty dollars in the lifetime of the testator in ademption of the legacies provided for them by the will, thus leaving Amanda to her chances of receiving more or less than the amount which they each received, and by that election they must be bound.

The parol statements of the testator to the executor as to the disposition he wished made of the residue, after paying Amanda her two hundred and fifty dollars, cannot, of course, control the disposition made by the will.

The judgment below is affirmed, with costs.

*H. W. Harrington, C. A. Korbly, J. Y. Allison,* and *W. T. Friedley,* for appellants.