JAMES T. THWEATT *et al.*, plaintiffs in error, *vs.* JAMES K. REDD, executor, *et al.*, defendants in error.

1. Where a testator, prior to the emancipation of the slaves, made his will, providing for the removal of his slaves to a free State, there to be manumitted, and bequeathing to them certain legacies, the fact that his negroes were emancipated by the results of the war, prior to the death of the testator, and not by the provisions of said will, did not prevent said legacies from vesting.
2. A legacy failing either by lapse or because void at law, falls into the residuum and passes to the residuary legatee, and not to the next of kin, where there is no contrary intention expressed in the will.
3. Where there was no ambiguity upon the face of the testator's will, parol evidence is inadmissible to raise a latent ambiguity and then to explain it.

Will. Emancipation. Legacy. Ambiguity. Evidence. Before Judge JAMES JOHNSON. Muscogee Superior Court. December Term, 1872.

For the facts of this case, see the decision.

HENRY L. BENNING; JAMES M. RUSSELL, for plaintiffs in error.

1st. The clear meaning of the will is that the negroes were not to take unless they remained the slaves of the testator until his death: 2 Ch. Rep., 162; 8 Viner Ab., 311; 2 Williams' Ex'rs, 833.

2d. But if there is any ambiguity, parol evidence was admissible to explain it: Irw. Code, secs. 2421, 3748; Doyal *et al. vs.* Smith, 28 Ga., 262.

3d. The sayings of the testator constitute good parol evidence: 1 Roper on Leg., 140; Trimmer *vs.* Bayne, 7 Ves., 508; Patterson *et al. vs.* Hickey, 32 Ga., 159.

4th. The legacies of all the legatees who died before the testator lapsed.

5th. The freed negroes were named, and the remainder of the money was to be "divided into as many parts as there are freed negroes in number, and part paid to each person over eighteen years of age, and the remaining parts divided among

the parents of the children in the precise proportion the several families of children bear to each other." It is not that the shares of any of the freed negroes who might be dead were to go to the survivors: Irw. Code, sec. 2426.

6th. The particular legacies to Marino ($2,500 00,) and to Howard, the executor, ($1,500 00,) certainly lapsed: Code, sec. 2426.

M. H. BLANFORD; B. A. THORNTON; MOSES & DOWNING; INGRAM & CRAWFORD; JOSEPH F. POU, for defendants.

The Court below put its decision upon two principles.

1st. The Court committed no error in rejecting the testimony offered by the heirs-at-law, because said testimony was irrelevant, in no way tending to demonstrate or make clear the matters of fact in issue. If relevant, it would only tend to show a revocation of the will by testator: See this case in 43 Ga., 142.

2d. The 2d and 6th assignments of error embrace the same propositions, and we will consider them together, and may be stated thus: "That said will is void because the persons therein named as legatees are incapable of taking." For divers reasons stated in the bill of exceptions, we consider this question settled as *res adjudicata :* See Redd *vs.* Hargroves, 40 Ga., 18; 39 *Ib.,* 564; Greene *vs.* Anderson, 38 Ga., 655; New Code, sections 2432, 2420.

The 3d, 4th and 5th grounds of error also embrace the same proposition and may be considered together, and embrace the question: "Did any of the legacies contained in the will under the facts lapse so as to vest in or pass to the testator's heirs-at-law?"

1st. We say that the persons mentioned in said will as legatees took as a class, and a well settled principle of law is that the death of one of several legatees of a class does not lapse the legacy, but it goes over to the other legatees of such class: 30 Ga. 977; 1 Rop. on Legacies, 333; 1 Jarman on Wills, 304 marg. p. 296.

2d. Defendants in error contend that the persons mentioned

Thwratt *et al. vs.* Redd *et al.*

as legatees in testator's will are also residuary legatees, and that the 4th clause of the will clearly establishes this proposition, and this being true, if any legacy lapsed it fell into the residuum and passed by said 4th item of said will: 32 Ga., 624; 31 Ga., 489; 30 Ga., 976; 3 Vesey, 450; 15 *Ib.*, 416; 1 Vesey, Sr., 321; 8 Vesey, 25; 2 Roper on Legacies, 487, 498.

3d. In construing wills, the intention of the testator is to be looked to and if the same is not contrary to law, the same is to be carried out: Greene *vs.* Anderson, 38 Ga., 655; Cook *vs.* Weaver, 12 Ga., 47; Code, 2420; Smith *vs.* Johnson, 21 Ga., 386.

WARNER, Chief Justice.

On the 25th day of February, 1852, Owen Thomas, then, and at the time of his death, a citizen and resident of the county of Muscogee, made and executed his last will and testament, whereby by the third item of his will he devised and willed that: " My negroes, Griffin and his wife, Esther, and their children, Peggy, Elizabeth and Griffin, now born, and such as they may hereafter have; Mariah and her children, Sandy, Jacob, Willis and William, now born, and such as they may hereafter have; Jack and his wife, Hannah, and the children of Hannah, Toney, Ned, Wyatt and Malinda, and the children of Malinda, Homer, Nathan and Daphney, and such other children as she may have; Washington and his wife, Pleasant, and their children, if they shall have any; Marino and all her children, Eliza, James, Margaret, and such as they may hereafter have; Hudson, Armstead and Pearce, be conveyed to Liberia, or any other free State foreign to Georgia, unto which they severally elect to go, in which they may lawfully reside and there be forever manumitted and freed, they and their posterity." And by the fourth item of the will said testator directed as follows: "I desire that all the residue of my negroes, my lands, stock, crops and property of every kind be sold for cash, and the proceeds of sales, along with moneys on hand, collection of debts of every class

due me, (excepting the debts of Thacker B. Howard speci-
fied,) be converted into a common fund to be disposed of as
follows: So much as may be required, to the payment of
debts, the defrayal of the expenses incidental to the execu-
tion of my will, the subsistence and removal to their new and
contemplated homes of such of my negroes as are intended to
be manumitted and freed, and the residue by eventual divis-
ion among my negroes who shall thus become free." By the
fifth item of his will, testator gave to each of his executors
the sum of $1,500 00 as fixed and full compensation for the
execution of his will ; to Griffin, the father, and Marino, each
the sum of $2,500 00 exclusive of, and additional to, what they
receive in common with the other freed negroes; these several
sums being abstracted and appropriated, he directed that the
remainder be divided into as many parts as there are freed ne-
groes in number, and one part paid to each person eighteen years
of age, on his or her arrival in his or her new home, without
regard to marriage or sex, including said Griffin and Marino,
and the remaining parts divided among the parents of chil-
dren in the precise proportion the several families of children
bear to each other. The sixth item of the will gave to Mrs.
Thacker Howard and her children a judgment of foreclosure
of a mortgage in the Court of chancery in Russell county,
Alabama. The seventh item appoints James K. Redd and
Augustus Howard, executors. This will was duly proven
and admitted to record in the Court of Ordinary of Musco-
gee county, and James K. Redd qualified as executor, and
letters testamentary issued to him for the proper execution of
said will. Augustus Howard, the other executor named in
said will, died before Owen Thomas. Said Thomas departed
this life on the 28th day of September, 1868.

The said Owen Thomas left as his heirs-at-law, Sophia W.
Hargroves, of Macon county, Alabama, his sister, and the
children of Mrs. M. W. Thweatt, deceased, to-wit: Jas. T.
Thweatt, Robert R. Thweatt, Thacker H. Thweatt, and Julia
M. Thweatt, child of Owen T. Thweatt, deceased.

The following legatees mentioned in said will, died before

Owen Thomas, the testator, viz: Elibabeth, Sandy, Willis, Marino, Jack, Hannah, Toney, Ned, Wyatt, Nathan. None of the legatees named in the will have had children born to them, except Malinda, who had one child, Mary, who is now in life and over eighteen years of age.

Upon the facts stated, said executor, Redd, filed his bill in Muscogee Superior Court against said heirs-at-law and surviving legatees mentioned, praying for directions as how to pay .out the funds in his hands, arising from the sale of the property of the estate of said Thomas, deceased. On the trial of the cause, the heirs-at-law offered to prove by several witnesses the declarations of the testator, made a short time before his death, going to show his unfriendly feeling towards some of the legatees on account of their bad conduct towards him, their abandonment of him, etc., and his general denunciation of all of them, which evidence so offered was ruled out by the Court; whereupon, the heirs-at-law excepted. Thereupon, all parties to the bill admitted that the following facts were true: That the following legatees mentioned in the will: Elizabeth, Sandy, Willis, Marino, Jack, Hannah, Neal, Wyatt, Nathan and Tony, died before Owen Thomas, the testator. That Esther, Peggy, Griffin, Jr., James, Eliza, Margaret, Malinda, Homer, Daphney, Washington, Pleasant, Hudson, Ann, Armstead, Pearce, Griffin, Sr., Jacob, William, eighteen in number, survived testator. That each of the eighteen were over eighteen years old at the death of the testator. That the twenty-eight persons named as legatees and negroes in the will were slaves of said Thomas, deceased, when his will was made. That those who had not previously died, accepted emancipation from the government, over two years before the death of Thomas.

The counsel for the heirs-at-law asked the Court to charge the jury as follows:

1st. That if the legatees named in the will were emancipated before the death of Thomas, they could not take under the will; that the intention of the will was to give them leg--.

acies only in case they remained his (testator's) slaves up to the time of his death.

2d. That the legacies of all the legatees who had died before the testator had lapsed, and their shares went to the defendants, heirs-at-law.

3d. That the money directed to be used by the executors in transporting the legatees to some free country, also lapsed and went to the heirs-at-law.

4th. That the legacy given to executor, Howard, also lapsed and went to the heirs-at-law.

5th. That the special legacy given to Marino, who died before Thomas, lapsed and went to the heirs-at-law.

6th. That there were certain conditions contained in the will which had to be complied with before the legatees could take their legacies under the will, viz.: 1st. That the negroes should continue to be his slaves until the time of his (testator's) death. 2d. That they should be carried by his executors to some free State or country, foreign to Georgia. 3d. That the legacies were not to be paid to them until they arrived in their new homes, in some free State or country foreign to Georgia. 4th. That the testator intended to give the legacies only in case the emancipation was brought about by his will, and not by the government, and if said conditions had not been complied with, then the legacies failed, and the property went to the heirs-at-law.

The Court refused to charge as requested. The heirs-at-law excepted to the decision of the Court upon each and every point requested, and assign error thereon. And thereupon, the jury returned the following verdict, viz.: "We, the jury, find that the complainant be allowed the sum of $1,500 00, as reasonable counsel fees. We further find that Griffin, Sr., died after the testator, and left Esther as his widow, and Peggy and Griffin, Jr., his children by his wife, Esther, as his heirs-at-law. We further find, of the negroes named as legatees in said will, in the third clause, to-wit: Elizabeth, Sandy, Willis, Marino, Jack, Hannah, Ned, Wyatt, Nathan and Toney died before the testator. We further find that, of the

Thweatt *et al. vs.* Redd *et al.*

legatees named in said third clause, the following survived him: Esther, Peggy, Griffin, Jr., James, Eliza, Margaret, Malinda, Homer, Daphne, Washington, Pleasant, Hudson, Armstead, Pearce, Griffin, Jr., William and Mariah, each over eighteen years old. We further find that Mariah had one child living at the death of testator, named Mary, sixteen years old at that time; that Daphne had one child at death of testator, named Sherman, about three years old; Hudson had one child at his death, about two years old, named Betsy; Pearce had two children at that time, one about six and the other four years old; Homer had one child at the death of testator, named Nett, about one year old; Eliza had one child four years old at testator's death, named Marino; William had one child named Sandy, at that time, about five years old."

And thereupon the Court decreed as follows: "This cause came on to be heard on the bill, answers of defendants, with exhibits and proof; the issues of fact were submitted to a jury who returned a verdict as hereinbefore stated. Whereupon, the premises considered, it is ordered and decreed that said complainant do retain out of said estate, as compensation for services as executor, the sum of $1,500 00, and also the further sum of $1,500 00 as a reasonable sum for the payment of expenses incurred in employing counsel to carry said will into execution. It is further ordered and decreed, it being made to appear that Griffin, Sr., survived the testator, but is now deceased, leaving Esther, his widow, and two children, Peggy and Griffin, Jr., his heirs-at-law; that said executor do pay to the said Esther, Peggy and Griffin, Jr., in equal parts, the said $2,500 00, legacy bequeathed by said testator to the said Griffin, Sr. It being further made to appear that eighteen of the persons specified in the 3d clause of said will, and who were to take as residuary legatees, survived said testator, as specified and set out in the verdict aforesaid, and that some of them had children who survived said testator, as specified in the verdict aforesaid, in number eight, and under the age of eighteen years, at the death of testator, it is further ordered and decreed that the said complainant, after retaining said sums before

allowed, and the payment of the said specified legacy of $2,500, shall divide the balance or residue of said estate into twenty-six equal shares; and having so divided it, he shall pay one share thereof to each of the following: To Esther, Griffin, Jr., Peggy, James, Margaret, Malinda, Washington, Pleasant, Armstead and Jacob. To each of the following, two shares: To Mariah, Daphney, Hudson, Homer, Eliza and William, and to Pearce three shares thereof. And it is also ordered and decreed that the one share thereof that was to be given to Griffin, Sr., shall be paid, in addition, to Esther, Griffin, Jr., and Peggy, in equal parts, as the heirs-at-law of Griffin, Sr. And it is further ordered and decreed that said complainant do pay out of the funds of said estate, the costs of this cause, to be taxed by the clerk; that he do report, in writing, to this Court at its next term, and from term to term thereafter, until duly discharged by law, his actions and proceedings under this decree." And thereupon the heirs at law excepted to said decree and assign the same for error.

1. This is the third time the will of the testator has been before this Court: See *Redd vs. Hargroves et al.*, 40 *Georgia Reports*, 18; 43 *Ibid.*, 142. This will has been established as the last will and testament of the testator, and we are now called on to construe the terms and provisions thereof in accordance with the rules of law applicable thereto. What is a will? A will is the legal expression of a man's wishes as to the disposition of his property after his death: Code 2359. The expressed wishes of the testator, as contained in his will, are, that certain specified negroes named therein (these slaves) should become free, and he provided for the accomplishment of that object, in the manner then allowed by law; and after giving certain specified legacies, mentioned in his will, desired that all his other property of every kind be sold for cash, and the proceeds thereof, with the money on hand, collection of debts of every class due him (except the debts of Thacker B. Howard) be converted into a common fund to be disposed of as follows: "So much as may be required for the payment of debts, the defrayal of the expenses incident to the execution

Thweatt *et al. vs.* Redd *et al.*

of my will, the subsistence and removal to their new and contemplated homes of such of my negroes as are intended to be manumitted and freed, and the residue by eventual division among my negroes who shall thus become free." By the fifth item of his will, the testator gave to Griffin and Marino each the sum of $2,500 00, exclusive of, and additional to, what they receive in common with the other freed negroes. These several sums being abstracted and appropriated, be directed that the remainder be divided into as many parts as there are freed negroes in number, and one part paid to each person eighteen years of age, on his or her arrival in his or her new home, without regard to marriage or sex, including Griffin and Marino, and the remaining parts divided among the parents of children in the precise proportion the several families of children bear to each other. It is contended for the plaintiffs in error that it is the clear meaning of the will that the negroes were not to take, unless they remained the slaves of the testator until his death. That the testator contemplated at the time of making his will that the negroes would remain his slaves at the time of his death, is quite apparent, and therefore he provided for their freedom in his will in the manner then allowed by law; but it is equally as apparent that the testator did intend that the legacy should be given to them when they were free—then they were to have it—that is to say, they were to have it by " eventual division among my negroes who shall *thus become free."* The clear and manifest intention of the testator was, that the negroes should have the legacy when they became free and could enjoy the same as freemen; and the question is, whether the negroes, having become free and capable of receiving and enjoying the legacy *here* as freemen, without removal to a free State for that purpose, as contemplated by the testator when the will was made, they can now take it as such freemen here? This is not an open question in this Court, since the decision of *Green vs. Anderson,* 38 *Georgia Reports,* 655; See, also, the opinions of this Court, in relation to *Redd vs. Hargoves et al.,* 40

*Georgia Reports*, 14, and *Hargroves vs. Redd* 43 *Georgia Reports*, 140.

2. Did the lapsed legacies go to the heirs-at-law of the testator or were the same disposed of by the testator in the 4th and 5th clauses of his will, to the legatees claiming the same? It is a general rule of the common law that lapsed legacies sink into the *residuum*, and unless disposed of by the testator, will go to his heirs-at-law, but if there be a residuary legatee under the will, when all the debts and particular legacies are discharged, the surplus or *residuum* must be paid to the residuary legatee named in the will. By the 2426th section of our Code, it is declared that if a legatee dies before the testator, or is dead when the will is executed, but shall have issue living at the death of the testator, such legacy, if absolute and without remainder or limitation, shall not lapse, but shall vest in the issue in the same proportions as if inherited directly from their deceased ancestor. It is very clear, from the will of the testator in this case, that he did not intend to die *intestate* as to any portion of his property, for he desires that all his property (except the debt of Howard and the negroes to be set free) of every kind, shall be sold for cash, and converted into a common fund, to be disposed of as follows: First, to the payment of debts; second, the defrayal of the expenses incidental to the execution of his will, the subsistence and removal to their new and contemplated homes of such of his negroes as are intended to be manumitted and freed, and *the residue* by eventual division among his negroes who shall thus become free. That is the disposition which the testator by the 4th clause of his will makes of *all the residue* of his property, of every kind. By the 5th clause, he gives to each of his executors $1,500 00 as compensation for executing his will, and gives to Griffin and Marino, each, the sum of $2,500 00 exclusive of, and additional to, what they receive in common with the other negroes; these several sums being abstracted and appropriated, be directed that the remainder be divided into as many parts as there are freed negroes in number, and one part paid to each on their arrival in his or her new home, etc. All

the residue of his property was to be converted into a common fund, and the testator directs the disposition of that common fund in the 4th and 5th clauses of his will, and if the legacies of any one of the legatees lapsed by death, or otherwise, his or her share sunk into the residuum of that common fund, which was disposed of by the 4th and 5th clauses of the will according to the manifest intention of the testator. A legacy failing either by lapse or because void at law, falls into the *residuum* and passes to the residuary legatee, and not to the next of kin, where there is no contrary intention expressed in the will: *Word vs. Mitchell,* 32 *Georgia Reports,* 623. The residuary legatees who were living at the time of the testator's death and named in his will, and the issue of those named therein as residuary legatees who were dead, take under the will as provided therein, to the exclusion of his heirs-at-law. There are no words in this will which so narrow the title of the residuary legatees as to exclude them from taking the lapsed legacies, as in the case of *Hughes vs. Allen,* 31 *Georgia Reports,* 484.

3. There was no ambiguity on the face of the testator's will which would have authorized the admission of parol evidence to explain it, and the purpose of the evidence offered by the heirs-at-law on the trial, was to raise a latent ambiguity as to the intention of the testator in disposing of his property by parol evidence, and then to explain it by the same species of evidence. If that could be done in a case like the one now before us, no man's will can stand after his death. If the testator did not intend that his will should be operative and take effect according to the plain, unambiguous terms thereof, why did he not destroy it, or revoke it by making another? The testator may have made the declarations sought to be proved, but he did no *act* to defeat or destroy his will, and thereby prevent its operation as such after his death. Testators frequently talk about their wills; sometimes deny they have made one, especially wills like the one before us, because they did not care to incur the odium of public opinion, or to disappoint the hopes of expectant heirs, but nevertheless re-

tain their will up to the time of their death, which is much better evidence of their intention as to the disposition of their property than their parol declarations as to their intention, proved by witnesses after their death. If the clause in a testator's will as it stands may have effect, it shall be so construed, however well satisfied the Court may be of a different testamentary intention : Code, sec. 2420. Where there is no ambiguity on the face of a will, parol evidence is inadmissible to explain it : *Hill et al. vs. Alford*, 46 *Georgia Reports*, 247. In view of the facts of this case, as disclosed in the record, we find no error in ruling out the parol evidence offered at the trial, or in refusing to charge the jury as requested, or in the decree rendered upon the verdict of the jury.

Let the judgment of the Court below be affirmed.