# Boyd, White & Co. *v.* Shiffer, Adm'r, et al., Appellants.

*Rescission of contract of sale—Fraudulent representations.*

If the vendor of goods does not rely on fraudulent representations made by the vendee, and does not part with his goods upon the faith of such representations, he cannot rescind the contract of sale on the ground of fraud.

Vendors, before selling goods to vendees, made inquiry of another merchant as to vendees' financial standing. The merchant without expressing an opinion sent to vendors a written statement of vendees similar in character to the false statement which vendees had previously sent to vendors. *Held*, that the question whether the vendors had relied wholly upon the false statement of the vendees was a question of fact for the jury.

*Contract of sale—Rescission—Waiver of right to rescind.*

Where a sale of goods has been made under fraudulent representations by the vendee, the vendor does not lose his right to rescind because he demanded payment or security from the vendee before declaring a rescission of the contract.

Argued Feb. 23, 1893. Appeal, No. 299, Jan. T., 1893, by defendants, J. B. Shiffer, administrator, et al., from judgment of C. P. Lackawanna Co., Nov. T., 1891, No. 157, on judgment for plaintiffs, Boyd, White & Co. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Sheriff's interpleader to determine ownership of goods.

The facts appear by the opinion of the Supreme Court.

Defendants' points were among others as follows:

" 4. If the jury believe that the plaintiffs took steps of their own to verify the statement of H. D. Judd & Co. the verdict must be for the defendants. *Answer:* I affirm that point. But if the plaintiffs shipped the goods entirely upon the confidence induced by this statement, notwithstanding the fact that they may have made other inquiries, if they shipped the goods upon the strength of this statement, and upon the confidence which was induced by it, then they may still recover, if you find the other facts in their favor." [1]

" 5. If the jury believe that the plaintiffs communicated with W. & J. Sloane, or others, regarding the financial standing of H. D. Judd & Co. and acted upon the judgment thus formed by themselves, the verdict must be for the defendant: *Answer:* I affirm that proposition. Of course, if they acted upon the judgment which they formed for themselves, from the statements or representations that were given to them by Sloane, why, they have no right to rely upon this statement. At the same time I say to you, as I said before, if they relied upon this statement, and the statement was false, they had the right to rescind the contract." [2]

" 8. Under all the evidence the verdict must be for the defendant." Refused. [3]

" 9. If the jury believe that the plaintiffs asked for payment and an assignment of the book accounts after they were aware of the alleged fraud, the verdict must be for the defendants. *Answer:* I affirm that proposition, but you must find that they were aware of the fraud that was perpetrated upon them, before I can affirm the point." [4]

" 10. If the jury believe that the plaintiffs' representative was instructed to employ an attorney, and the attorney was present at the time of demanding payment and asking for an

assignment of the book accounts, the plaintiffs are bound by their acts. *Answer :* I affirm that proposition, provided you find that they knew, or had reasonable ground to believe that the fraud had actually been perpetrated upon them." [5]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (1–5) instructions, quoting them.

*George M. Watson, Walter Briggs* with him, for appellants.— It requires artifice, trick and false pretence as a means of obtaining possession, and to avoid the purchase there must be bad faith and intent, at the time, to defraud the seller : Smith v. Smith, Murphy & Co., 21 Pa. 367 ; Bunn, Raiguel & Co. v. Ahl, 29 Pa. 387 ; Backentoss v. Speicher et ux., 31 Pa. 325 ; Harner v. Fisher, 58 Pa. 453 ; Williams v. Davis, 69 Pa. 21.

A party who intends to repudiate a contract for fraud must do so as soon as he discovers the misrepresentation. If, subsequently, he treats the contract as subsisting, he waives the right of rescission : 2 Addison on Contracts, p. *1178 ; Pollock on Contracts, 572.

Relief cannot be given on account of fraud or misrepresentation to a party who has in fact not acted on the statements of the others, but has taken steps of his own to verify them, and has acted on the judgment thus formed by himself : DeCamp v. Hamma, 29 Ohio St. 467 ; Weaver v. Carpenter, 42 Iowa, 343 ; Anderson v. Warne, 71 Ill. 20 ; Hanna v. Rayburn, 84 Ill. 533.

To submit a case to the jury there must be evidence of such a character that the mind may reasonably rest upon it, though it may be with some hesitancy : Raby v. Cell, 85 Pa. 80 ; Matlack v. Mann, 37 Leg. Int. 349.

*Geo. S. Horn, W. G. Ward* with him, for appellees.—Evidence of frauds, of a similar nature, perpetrated by H. D. Judd & Co. is pertinent evidence upon the question of intent : Neff v. Landis, 110 Pa. 204.

OPINION BY MR. JUSTICE DEAN, July 19, 1893 :

H. D. Judd & Co. carried on a furniture and carpet store in Scranton. The plaintiffs, Boyd, White & Co., are wholesale

carpet dealers in Philadelphia. Simpson was a salesman for their house. In June, 1891, he called upon Judd & Co., in Scranton, and took an order from them for a bill of carpets amounting to $1,005.41, which he transmitted to his firm; on receipt of it, they wrote to Judd & Co., asking for a statement of their financial condition; they got from them in reply this letter:

"SCRANTON, Pa., July 1, 1891.

"Boyd, White & Co.—Gentlemen: In answer to yours, we send the following: Stock on hand $22,000. Good accounts, $6,000. We owe accounts, $8,000. We have no real estate, no judgments against us. Buy goods of E. R. Artman, Trickler & Co., and W. & J. Sloane.          H. D. JUDD & Co."

The plaintiffs then, in five different shipments, ending 8th of August, filled the order and charged the price, $1,005.41, on their books. No part of it was paid. On 21st of August, thirteen days after the last delivery, Judd & Co. confessed judgments, the greater part to near relatives, for over $17,000, on which executions immediately issued, and the sheriff levied on the entire stock of furniture and carpets in Judd & Co's store.

Two days after the levy, plaintiffs, learning of the situation, sent their agent, B. F. Murphy, to Scranton to have the contract rescinded and reclaim the goods, because of alleged false and fraudulent representations of Judd & Co. in procuring it. Murphy identified the goods still in the store which had been delivered under the contract, scheduled them, notified both Judd & Co. and the sheriff of their election to rescind, and demanded a redelivery. The sheriff thereupon petitioned the court for an issue under the interpleader act to determine the ownership; this issue, between these plaintiffs and defendants, the execution creditors, was framed. On the trial, plaintiff showed that Judd & Co., on the 1st of July, when they stated their indebtedness at $8,000, were in fact indebted $44,000, and that their assets were largely overstated. They also offered testimony, tending to show that they relied on the statements of Judd & Co. as to their financial condition, and that on the faith of them the goods were shipped. There was evidence that Murphy, when he first went to Scranton and discovered the amount of indebtedness, sought to get some sort of payment or security for plaintiffs' account; his first step was, not at once

to identify and reclaim the goods, but to make a demand on Judd & Co. for payment or security. There was ample evidence of the falsity of the representation; the evidence as to whether plaintiffs relied on the representation when they delivered the goods, was not undisputed; that tending to show any act of Murphy in distinct affirmance of the contract, after full knowledge of the fraud, was very meager. But, however this may be, all the evidence was fully and very fairly submitted to the jury by the learned court below, with instructions on the law pertinent to the issue. The jury found for the plaintiffs, and from the judgment entered on that verdict, this appeal is taken.

The assignments of error are all to answers by the court to defendants' points. Of these there were ten; eight of them were affirmed and two denied, yet four of the five assignments of error are to the affirmative answers of the court to appellants' own special requests to charge. While the learned judge, very properly, followed his peremptory affirmation of several of these points by explanations, which tended to clearness and guarded the jury against misapprehension, still, in not a single instance was anything said which weakened or essentially modified the force of the direct answer. We may, therefore, dismiss the assignments of error, so far as they relate to the affirmed points, with the remark, that, if counsel did not want the judge to so charge, they should not have asked him to.

The third assignment of error is to the refusal of the court to affirm defendants' eighth point, that under all the evidence the verdict should be in their favor. It is argued that plaintiffs failed to show they had delivered the goods on the faith of the false representations, but that on the contrary their own evidence showed they relied on their own judgment, based on inquiry from others. It is the law that, no matter what may have been the falsity of the representations made by the vendee, if the vendor relied not on them, did not part with his goods on the faith of them, he cannot avoid the sale. The plaintiffs did make inquiry of W. & J. Sloane as to the financial standing of Judd & Co., and they replied by giving them the statement of Judd & Co. made some time before to them; Sloanes did not give their opinion, but only Judd & Co.'s representations to them, which were in substance the same made to Boyd, White & Co.

It will be noted that Judd & Co., in their letter of July 1st, in effect, had referred plaintiffs to Sloanes, with whom they had already placed a similar written statement. The point is well made that, if plaintiffs relied on the opinion of Sloanes, and not on Judd & Co.'s representation of July 1st, there could be no rescission because of the falsity of that representation; but when Sloanes expressed no opinion, and simply repeated Judd & Co.'s statement, the inference that plaintiffs did not rely wholly on the false representation to them personally by Judd & Co., is not warranted. Mr. Hill, of Boyd, White & Co., the active partner in the contract, testifies positively that, while they sought corroboration of Judd & Co.'s statement from Sloanes, they parted with their goods solely on the credit of that statement. The question was clearly one of fact for the jury, who were instructed, both in the general charge and in answer to plaintiffs' fourth and fifth points, that, unless plaintiffs made the contract relying upon the truth of Judd & Co.'s statement to them, they could not rescind, no matter what the degree of its falsity. There would have been manifest error in not submitting this question for the determination of the jury.

Appellants further allege, there was undisputed evidence of an affirmance of the contract by plaintiffs after the discovery of the fraud. It is settled, that a defrauded vendor must promptly declare his election to rescind on discovery of the fraud; he cannot accept payment or advantage under the contract, and then, when disappointed, elect to rescind.

It appears here, from the evidence, that, on the 25th day of August, immediately after the seizure, Murphy, agent of plaintiffs, went to Scranton, and with his attorney called upon H. B. Judd, one of the partners; they accused the firm of falsehood in the statement of July 1st, and, according to appellants' view of the testimony, demanded payment, judgment note, assignment of accounts, or security of some kind, which the debtors, under the advice of counsel, declined to give; the same day, plaintiffs gave notice of their election to rescind.

Assuming this to be the correct view of the rather contradictory testimony as to what took place, it was not such an affirmance or ratification of the contract as would bar the plaintiffs of their right to rescind; plaintiffs could accept payment or security for their goods, if the fraudulent debtor chose to

make the one or give the other; the fraud on them consisted in the representation, at the time of the purchase, that he was amply able to pay; the demand and refusal only demonstrated the absolute falsity of his previous representation; he gave them nothing in response to the demand, and they got nothing by it. If any note or property had passed, or there had been an assignment of any book accounts as payment or security, this would have been such an affirmance of the contract as would have been wholly inconsistent with the right of rescission, and plaintiffs' case would fall; but there was nothing of this kind; only a demand for payment or security, a refusal, followed immediately by reclamation of the goods. The court, at the request of appellants in their ninth point, instructed the jury, " that if plaintiffs asked for payment, and an assignment of book accounts after they were aware of the fraud, they could not recover the goods."

The jury, from their verdict under this instruction, must have found the demand was before they were aware of the fraud; but the instruction given was much more favorable to appellants than the law or the evidence warranted; there was no sufficient evidence of an affirmance of the contract to warrant a submission.

We find nothing of merit in any of the assignments of error. The verdict of the jury determines that Judd & Co., by the grossest falsehood, induced plaintiffs to part with the possession of their goods, without paying on them a single dollar, and this only thirteen days before, by an act of bankruptcy, they put them in the grasp of preferred creditors. The whole issue was one of fact, and the verdict settles the fraudulent character of the transaction with reference to these plaintiffs, and while we do not hesitate to affirm the judgment, it is a matter for regret that there existed the fact of such flagrant dishonesty and fraud.

All the assignments of error are overruled, the judgment is affirmed, and the appeal is dismissed at costs of appellants.

Cf. Sloane v. Shiffer, above, p. 59, and Schofield v. Shiffer, above, p. 65.