CITIZENS & SOUTHERN NATIONAL BANK, executor, *et al.* v. CLARK *et al.; et vice versa.*

Nos. 7987, 7999.  APRIL 17, 1931.

628

*Fleming & Fleming, Hammond & Kennedy,* and *Hull, Barrett & Willingham,* for plaintiffs in error in main bill of exceptions.

*James S. Bussey Jr.,* and *Callaway & Howard,* contra.

HINES, J. This is the second appearance of this case in this court. *Clark* v. *Clark,* 167 *Ga.* 1 (144 S. E. 787). The question involved, when the case was here before, was whether the trustees could retain investments made by and received from the creator of

the trust, when such investments were in stocks in which the trustees would not be authorized under our statute to invest trust funds, and where there was no provision in the instrument creating the trust, either expressly or by implication, authorizing the trustees to retain such stocks. We then held that the power of the trustees to retain investments made by and received from the creator of the trust is, in the absence of contrary statute or provision in the instrument creating the trust, not different from their power to make investments. Owing to the importance of the question to the defendants, to the beneficiaries, and to the public, we, when the case was here before, gave to this question long and anxious consideration; and since the decision in the case we have further carefully considered this question; and we are convinced that the ruling then made expresses the true law upon this subject. This ruling became the law of this case; and the ruling is now controlling unless something developed upon the trial of the case which makes this ruling inapplicable under the facts.

When the case went back it was referred to an auditor to pass upon the law and the facts. The auditor made his report of his findings of law and fact, to which both the plaintiffs and the defendants filed exceptions of law and of fact. In the exceptions filed by the trustees they set up that there was an ambiguity in the will of the testator relating to the powers of the trustees to retain his mill stocks.

The auditor found that the language of the will was plain and unambiguous, and that, under the construction put upon the instrument by this court, such meaning could not be changed by parol proof that the testator desired or intended it to have a different meaning from that expressed in the will. To this finding of the auditor the trustees except upon the ground that language in the will, which is apparently plain and unambiguous, could be shown by parol evidence to contain a latent ambiguity which, when so created, could lawfully be explained by parol evidence as to the true meaning and intention of the testator. It is undoubtedly true that ambiguities in a will may be explained by parol testimony, and that the circumstances surrounding the making of the will may be considered in construing it. It is likewise true that where the language of a will is doubtful or ambiguous, parol evidence is admissible for the purpose of assisting the court in ascertaining its

meaning. In such a case parol evidence may be admitted for the purpose of showing and explaining a latent ambiguity in a will. When called upon to construe a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of its execution; and the court may hear parol evidence to explain all ambiguities, both latent and patent. Civil Code (1910), § 3901. But when the terms of a will are plain and unambiguous, they can not be varied or explained by parol evidence showing an intention on the part of the testator at variance with that expressed in the instrument. *Erwin* v. *Smith,* 95 *Ga.* 699 (22 S. E. 712). It is likewise true that this court has approved Lord Bacon's definition of a latent ambiguity, as one "which seems certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter, outside of the deed, that breedeth the ambiguity." *Oliver* v. *Henderson,* 121 *Ga.* 836, 838 (49 S. E. 743, 104 Am. St. R. 185). So in *Walker* v. *Wells,* 25 *Ga.* 141 (71 Am. D. 164), this court held that it could be shown by parol evidence that a grant to "Berry Stephens, an orphan," was intended to be a grant to the orphan of Berry Stephens, there being such a person in life, and there being no person answering the first description. Here the language of the grant was on its face plain, and the ambiguity was brought about by the fact that there was no such person answering the description of the grant, but there was a person who was the orphan of Berry Stephens. It was held that the ambiguity could be explained by parol proof. In *Oliver* v. *Henderson,* supra, a testator devised to A "lot of land (78) in the second district of Dooly county." The testator did not own lot 78, but did own lot 68 in the district named. The testator said during his lifetime that he intended to give lot 68 to A, and often referred to this lot as the property of A. In construing this devise this court held that the facts alleged above could not be shown by parol in order to show that the testator meant to convey lot 68 in the district named, instead of lot 78 therein. Courts can not give effect to the will of the testator contrary to the plain and obvious terms used by him upon a mere conjecture as to his intention. *Wright* v. *Hicks,* 12 *Ga.* 156 (56 Am. D. 451). Where there is no ambiguity on the face of a will, parol evidence is not admissible to explain it. *Hill* v. *Alford,* 46 *Ga.* 247. When there is no ambiguity on the face of a will, either latent or patent, it is

never competent to raise an ambiguity in relation to the intention of the testator, by parol evidence extrinsic of the words of the will, and then proceed to explain the ambiguity so raised by like evidence. A testator's will should be construed according to the legal effect of the language used therein. It is only when the words of the instrument are ambiguous or of doubtful meaning that resort to parol evidence can be had in construing the instrument. *Hill* v. *Felton,* 47 *Ga.* 455, 470 (15 Am. R. 643). "Where there is no ambiguity in a will in relation to the testator's intention, it is not competent to raise one by parol, and then explain it by the same species of evidence." *Atwood* v. *Geiger,* 69 *Ga.* 498. To the same effect see *Thweatt* v. *Redd,* 50 *Ga.* 181; *Gillespie* v. *Schuman,* 62 *Ga.* 253; *Maxwell* v. *Hoppie,* 70 *Ga.* 163 (3); *Crawley* v. *Kendrick,* 122 *Ga.* 183 (50 S. E. 41, 2 Ann. Cas. 643). The testator having written his will, it is the exponent of his intention; and if that is clear, and if in the will itself there is no ambiguity, it is obligatory upon the courts; and it is not within the duty or within the power of the courts to annex another condition to that contained in the will. To do so would be making a will for the testator, and not construing the one he has made for himself. *Hall* v. *David,* 67 *Ga.* 72.

Now what are the facts upon which the trustees rely to show that it was the intention of the testator that they could without risk retain these mill stocks? One of these facts is that the will expressly conferred upon the trustees the power to borrow money and to mortgage or pledge the title to the property of the trust estate to secure the money so borrowed. No implication which would authorize the trustees to retain these speculative securities arises from this language. On the contrary this provision, instead of authorizing the trustees to retain these stocks, empowered them to deal with them in a manner which might result in the loss thereof. Again, it is urged in behalf of the trustees that the testator in his will directed them to pay from the income of his estate the sum of $400 per month to his widow for the support of herself and the support and education of his children; that the income from the trust property, if invested in the securities in which the trustees could invest the trust funds by our statute without the approval of the judge of the superior court, would not have been sufficient to make this payment; and that from this fact the conclusion can be

drawn that the testator intended that the trustees should retain his mill stocks. This conclusion does not logically follow from the facts stated. Under our law trustees can only invest trust funds in securities issued by this State, in county or municipal bonds which have been validated, and in farm-loan bonds issued by the Federal land banks or joint-stock land banks; and any other investments of trust funds must be made under an order of the judge of the superior court, or else at the risk of the trustees. Civil Code (1910), §§ 3763, 3765; Acts 1918, p. 160; 9 Park's Code Supp. 1922, § 3765(a). As a matter of common knowledge, the investment of these trust funds in the securities in which trustees could invest without order of the judge of the superior court would not have produced income enough to enable the trustees to pay to the wife for herself and for the education and support of the children of the testator $400 per month. The statute, however, does not limit trustees to such investments. They can make or retain investments of a more speculative and more productive character under order of the judge of the superior court, or at their own risk. As we held when the case was here before, the trustees could have protected themselves by applying to the judge of the superior court and procuring an order authorizing them to retain these mill stocks, if the judge saw fit to authorize such retention. Not having obtained such authority, the trustees elected to retain these stocks at their risk, which they could do under our statute. No conclusion can be drawn from this provision in the will that the testator intended that the trustees should or could retain these mill stocks without risk, from the fact that the securities in which trustees could invest trust funds without an order of the judge of the superior court would produce insufficient funds to authorize the trustees to make the monthly payment to the wife and children of the testator directed to be made in his will.

The express power conferred on the trustees and their successors to sell without the order of any court any or all of the trust property, and to invest the proceeds in their discretion, did not confer upon the trustees authority to retain these stocks. This we held when the case was first before us. The discretion vested in the trustees was one which they could only exercise according to the law governing the investment of trust funds. They could invest the proceeds in the securities in which the statute authorized

them to invest, without the sanction of the superior-court judge. They could invest the proceeds in other securities with the approval of the superior-court judge, or they could invest in any securities they saw fit and take the risk. When the case was first before us we considered these provisions of the will, and reached the conclusion that they did not authorize the trustees to retain the stocks, when, under their management, they were providing no income, and until they became wholly worthless. This ruling became the law of the case, and was controlling on the trial before the auditor. On the hearing before the auditor certain facts were in evidence which do not appear from the allegations of the petition; and it is insisted that these facts, which appear outside of the will, authorize a finding that the testator directed the trustees to retain these stocks. From the will, a copy of which is set out in full preceding this opinion, it does not appear that the testator expressly directed the trustees to retain these stocks. When the case was here before it was held by a majority of this court that such direction could not be implied from the provisions of the will.

So the question now arises, can such direction be deduced from certain facts which were brought out before the auditor and with which we will now deal? The direction to retain these stocks could not be inferred from the fact that the testator was the executor of his father's will, which contained provisions similar to his own, and from the fact that under such provisions of his father's will the testator held the stock of the Sutherland Manufacturing Company for the estate of his father. The testator had the right to retain this stock under his father's will, as these trustees had the right to do under his own will; but in either case the retention was at the risk of the testator in the former case, and at the risk of the trustees in the present case.

Again, it is insisted that the testator, in a letter written a few days before his death to the trustee, Clark, used the language: "I am relying on you to never let the control of the Sutherland away from my estate. The arrangement I made with you I would not have with any one else." From this declaration the conclusion is drawn that the testator intended by his will to authorize the trustees to retain this stock until under their management it became totally worthless. Miss Lillian Clark, a sister of the testator, testified that he wanted to buy some of the Sutherland mill stock

from her, when she asked him why he wanted it, and he said that he wanted a majority of the stock in order that he could leave the mill to his son Weldon to run, and that Weldon would ultimately run it. Another sister of the testator testified to the above declaration of the testator to his sister. From this declaration the deduction is drawn that the testator intended that the trustees should hold the stock of the Sutherland mill, to the end that his son Weldon might control and manage the same. To give effect to the declaration contained in the above letter of the testator and to his declaration to his sister above set out would only create an ambiguity which does not appear from the terms of the will, and would amount to an attempt to explain the ambiguity thus created by the declarations of the deceased, in contravention of the law upon this subject as above set out. Besides, giving effect to these declarations would in effect amount to inserting in the will a provision for the benefit of the son of the testator, in contravention of the principle that new provisions can not be added to a will by declarations of the testator not contained therein.

So we are of the opinion that there was no ambiguity, patent or latent, in the will; that parol or written declarations of the deceased, extrinsic of his will, were not admissible to create such ambiguity, and to explain the same; and that to give effect to the declarations of the deceased would be adding to the will a provision not contained therein and which could not be shown by such declarations of the testator. We recognize the hardship which falls upon the · trustees by reason of the ruling which we make; but it is of great importance that the statute authorizing investment of trust funds should be enforced. As we have seen, this statute is applicable to the retention of stocks as well as investment of trust funds in stocks. This statute should be strictly enforced when trustees place themselves in a position in which their interests are antagonistic to the beneficiaries of the trust.

Under the above rulings, the judgment of the trial judge which sustained the findings of the auditor upon this subject should be affirmed. As this ruling controls the case, it is unnecessary to consider any other assignments of error, or to consider the assignments of error set up in the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions; cross-bill of exceptions dismissed. All the Justices concur.*

Beck, P. J., and Atkinson, J., concurring specially. We adhere to the views expressed in the dissenting opinion rendered in the former decision; but the ruling of the majority became the law of the case and constrains us to concur in the judgment of affirmance.