SNELLINGS, executor, *et al. v.* DOWNER, administrator, *et al.; et vice versa.*

Nos. 13877, 13878.   January 16, 1942.

*B. W. Fortson,* for plaintiffs in error. *W. A. Slaton,* contra.

JENKINS, Justice. ■ "When called upon to construe a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of its execution; so the court may hear parol evidence to explain all ambiguities, both latent and patent." Code, § 113-807. But if the terms of a will when legally construed are plain and unambiguous, parol evidence can not be received for the purpose of showing an intention contrary to that which the language when properly construed necessitates. *Erwin* v. *Smith,* 95 *Ga.* 699 (22 S. E. 712) ; *Hill* v. *Hill,* 161 *Ga.* 356, 359 (130 S. E. 575), and cit.; *Citizens & Southern National Bank* v. *Clark,* 172 *Ga.* 625 (2, 3), 630 (158 S. E. 297). Nor is parol evidence admissible to raise a latent ambiguity and then to explain it. *Thweatt* v. *Redd,* 50 *Ga.* 181 (3), 191; *Gillespie* v. *Schuman,* 62 *Ga.* 252 (2), 257. Where no such ambiguity exists as a legal construction will not resolve, the construction is for the court, and not for the jury. *Phillips* v. *Crews,* 65 *Ga.* 274 (3) ; *Butler* v. *Prudden,* 182 *Ga.* 189, 191 (185 S. E. 102). Accordingly, there being no such ambiguity in the language of the will here involved, the court did not err in striking portions of the answer which sought to show by extrinsic evidence a different intention of the testator with respect to the beneficiaries of the residuary real estate; and in holding that the construction of the residuary clause with regard to lapsed devises and bequests was a question of law for the court to determine from the will itself.

■ "If a legatee shall die before the testator, or if dead when

the will is executed, but shall have issue living at the death of the testator, such legacy, if absolute and without remainder or limitation, shall not lapse, but shall vest in the issue in the same proportions as if inherited directly from their deceased ancestor." Code, § 113-812. But if a devisee or legatee shall die after the making of the will, leaving no child or descendant of child living at the death of the testator, such a lapsed devise or legacy passes in accordance with the following rules:

Under the Code, § 113-813, which follows the common-law rule abrogated in many States, "ordinarily real estate described in a lapsed or void devise shall descend to the heir" of the testator. *Williams* v. *Whittle,* 50 *Ga.* 523, 525. As to a lapsed devise (of real estate), the rule is thus the same in passing the property to the heirs of the testator, whether the lapse related to a special devise or related to part of the residuary clause itself. See 69 C. J. 1079-1081, §§ 2315, 2316. To this rule there are three exceptions: (1) manifestly the rule is different where the will provides a contrary disposition as to such a lapsed devise; (2) where the devise was "necessarily contingent when the will was made, on failure of [which] contingency the residuary legatee shall take" (Code, § 113-813; *Dillard* v. *Ellington,* 57 *Ga.* 567 (17), 593), "unless the will contains *special* indication of a contrary intention on the part of the testator" *(Hill* v. *Hill,* 149 *Ga.* 741 (101 S. E. 121, 102 S. E. 151, 10 A. L. R. 1514, 1529, note); and (3) where the devise is not made to one person or to several named persons as *individuals,* but is plainly made to the devisee and others as members of a *class,* in which case the death of one merely eliminates the deceased from the class or group of beneficiaries, the survivors of whom will take the gift proportionately to their number when the devise vests. *Toucher* v. *Hawkins,* 158 *Ga.* 482, 484 (123 S. E. 618); 28 R. C. L. 260, § 233; 2 Schouler on Wills (6th ed.), 1167, 1168, § 1011.

"By [a] gift to a class is legally meant . . an aggregate [gift] to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time designated, who are to take in some definite proportion, the share of each being dependent for its amount upon the ultimate number, and is not on its face a transfer of title to any particular or designated member or members of the class. It is one of the characteristics of

a gift to a class that its members are to be ascertained at a future time, and whenever at the time of making a will the number of beneficiaries is certain and the share each is to receive is certain and not dependent on the number who shall survive, the gift is not to a class, but to the individuals personally." *Toucher* v. *Hawkins,* supra; Redfearn on Wills (rev. ed.), 262-265, § 155, and cit. If a gift is made to beneficiaries by name, prima facie the gift is not one to a class, but to the beneficiaries as individuals, even though the persons named may possess some quality in common; and if no contrary intention appears from the context or other parts of the instrument, the beneficiaries will take as individuals, and not as a class. 28 R. C. L. 262, § 235, and cit.; 3 Page on Wills (ed. 1941), 204-208, § 1049, and cit. This is true even though "mere designation by name does not . . in all cases show that the persons were dealt with as individuals, and not as a class," but "the intention of the . . testator must be gathered from the whole instrument; and if there are other words used which show that he had the persons named in mind as a class, this intention will be allowed to control;" and even though "where persons are designated by name, and language is also used which indicates that the maker of the instrument had them in mind not as individuals but as members of a class, it must be determined which idea was uppermost or controlling in his mind." *Stiles* v. *Cummings,* 122 *Ga.* 635, 636 (50 S. E. 484), and cit.

■ The will in this case gave to the testator's wife, for life, a one-hundred acre tract to be selected by her, two horses and two cows to be selected by her, and $500 from an insurance policy, from a much larger estate consisting mostly of land; and contained a residuary clause, as follows: "All the rest, residue, and remainder of my estate, real, personal, and mixed, I give, devise, and bequeath to my brother Ed and my three sisters Minnie, Fannie, and Janie." Two of the sisters predeceased the testator. Applying the rules of law to the facts of this case, the lapsed devises of real estate given by the residuary clause will go to the heirs at law of the testator, as not coming under any of the three exceptions to the general rule. With reference to the last-stated exception, this clause must be construed as a gift to the named persons as individuals, and not to a class, since there was no

contrary testamentary language to evince that they were to take as a class if any of them without leaving issue should predecease the testator. *Richardson* v. *Burns,* 142 *Ga.* 779 (2) (83 S. E. 788) ; *Burns* v. *Richardson,* 145 *Ga.* 430 (3), 438 (89 S. E. 418). The facts differ from those in cases where the beneficiaries were not named, or other language of the testator manifested a clear intent or a leading or uppermost idea to make the gift to a class, for some expressed reason. See, in this connection, *Martin* v. *Trustees of Mercer University,* 98 *Ga.* 320 (25 S. E. 522); *Springer* v. *Congleton,* 30 *Ga.* 976; *Stiles* v. *Cummings,* 122 *Ga.* 635, 637 (50 S. E. 484) ; *Toucher* v. *Hawkins,* supra; *Davie* v. *Wynn,* 80 *Ga.* 673 (6 S. E. 183).

■ With respect to a lapsed legacy (of personal property), the Code, § 113-813, provides that it "shall fall into the residuum and go to the residuary legatee." It was the rule at common law, and it is apparently the unanimous holding of the decisions in other States as well as in Georgia, that a lapsed gift of personalty—other than one which is given in the residuary clause itself—will become a part of the residuum, and as such will pass to the residuary legatees, unless the will itself shows a contrary intention on the part of the testator. *Williams* v. *Whittle,* 50 *Ga.* 523, 525; *Hughes* v. *Allen,* 31 *Ga.* 483, 489, 491; *Word* v. *Mitchell,* 32 *Ga.* 623, 624; *Thweatt* v. *Redd,* 50 *Ga.* 181 (2), 191; 4 Page on Wills (ed. 1941), 192, § 1428, and cit.; 69 C. J. 1072, § 2310, and cit. But where the lapse occurs as to personalty given by the residuary clause, the contrariety of opinion in other jurisdictions is thus stated by Page in his work on Wills: "If the residuary gift itself lapses, such lapsed gift does not form a new residuum in the absence of specific language showing that this is testator's intention. If there is one residuary legacy, and such legacy lapses, it passes to the heir or next of kin as intestate property if there is no gift over. If the residuum· of the estate is given to two or more individually, and not as a class, and the gift to one of them lapses, the question is raised whether such lapsed gift should pass under the residuary clause to the other residuary legatee, or whether it should pass to testator's next of kin as intestate property, in the absence of language in the will which tends to show the disposition which testator intends to make of it under such circumstances. It is now settled, by the

weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum; but that it passes to testator's next of kin as intestate property." Decisions of eighteen States are cited, so holding, with the decisions of six States which have severely criticized the rule of the numerical majority, and have either adopted the contrary rule or held that they would do so if the question were open under previous decisions of the State. 4 Page on Wills (ed. 1941), 195, 196, § 1430. See also notes in 74 A. L. R. 547, 28 A. L. R. 1237, 44 L. R. A. (N. S.) 811, and cit.; 69 C. J. 1080, 1081, § 2316, and cit. The author continues: "This rule has been laid down in a number of cases without much reference to the underlying reason. It has been urged that the same rule which applies to the lapse of a small portion of the residuum should apply to a lapse of the great bulk thereof; that it could not have been testator's intention that a single surviving residuary legatee, to whom a small fraction of the residue was given originally, should take the entire residue in case the other residuary legatee had died before testator; and that, accordingly, every lapsed residuary gift was intestate property. In some cases the rule has been criticized quite sharply on the ground, among others, that it defeats testator's intention in more cases than it gives effect thereto. In some states the courts have held the general rule to be unsound; and have taken the position that a lapsed residue becomes a part of the residue; and passes to the remaining residuary legatees. . . Even if the rule is still recognized, it is evaded by invoking principles of construction by which the court can find that the will showed testator's intention to pass the entire residue to the surviving residuary legatee or to the descendants of the deceased legatee."

In criticizing the rule as without sound underlying reason, the Supreme Court of Pennsylvania said, in Gray's Estate, 147 Pa. 67, 74 (23 Atl. 205, 206): "The rule thus established does not commend itself to sound reasoning, and is a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of general residuary legatees, that his next of kin shall not participate in the distribution at all. The rule is in fact a concession to the set policy of English

law, . . to keep the devolution of property in the regular channels, to the heir and next of kin, whenever it can be done." In Wright v. Wright, 225 N. Y. 329 (122 N. E. 213, 217), it was said: "The reason for this distinction [between a lapse of a general legacy and a lapse of a legacy which is part of the residuum] in most cases is not very apparent, satisfactory or convincing. The one most often given is based on the assumption that it could not have been the intent of the testator in disposing of his residuary estate that a bequest of the residue thereof should be augmented by the lapse of other bequests from such residuum. . . While this course of reasoning has some apparent force where the residuum consists of a definite sum or specific property, and where it might be assumed that the testator by the residuary clause intended to make a definite bequest, it is difficult to appreciate the force of the reason in such a case as the present one, where the residuum . . consists of a certain portion of an estate of unknown value, and where there seems no good reason for withholding application to the residuary clause and lapsed legacy of the principles ordinarily covering such a situation." In such cases, as was said in Corbett v. Skaggs, 111 Kan. 380 (207 Pac. 819, 28 A. L. R. 1230), the controlling principles are that "the actual purpose of the testator, so far as it can be ascertained, must be given effect," and "the presumption against intestacy of any part of the estate." With reference to the language in some decisions, that a bequest which is part of the residue in the residuary clause can not *fall* into the residue, because it is a part of the residue, and it must pass as intestate estate" (Lyman v. Coolidge, 176 Mass. 7, 56 N. E. 831; Dresel v. King, 198 Mass. 546, 85 N. E. 77, 126 Am. St. R. 459, 460; citations in 28 R. C. L. 339, § 331), it was said in the Corbett case that such reasoning "appears rather to play upon words than to point out any real difficulty." The mere use of the word "fall" would seem to be without particular significance as showing any distinction between a lapsed legacy (of personalty) given in the residuary clause, and a lapsed legacy given in another part of the will. If it lapses, it merely passes to some one just the same, whether it "falls" or whether it merely continues in the residuary clause. See also West v. West, 89 Ind. 529; Holbrook v. McCleary, 79 Ind. 167; Gray v. Bailey, 42 Ind. 349; Hedges v. Payne, 85 Ind.

App. 394 (154 N. E. 293; Waln's Estate, 156 Pa. 194, 197 (27 Atl. 60); Aitken *v.* Sharp, 93 N. J. Eq. 336 (115 Atl. 912); Prison Asso. *v.* Russell's Admr., 103 Va. 563 (49 S. E. 966); 31 Yale Law Journal, 782, and note; 2 Jarman on Wills (6th ed.), 1056-1058.

In this State the question as to the disposition of a lapsed legacy (of personalty) in the residuary clause itself remains an open one, in which this court is free to look to sound underlying reasons, without being bound by any adjudication which the court has previously made. In *Silcox* v. *Nelson,* 24 *Ga.* 84 (2), 90, on which counsel for the heirs particularly relies, the ruling that "a legacy lapsed does not fall into the residuum, where it is manifest from the will that the testator did not intend that the residuary legatees, from the nature of the bequests or devises to them, should take any part of a legacy," was based upon the fact that "the residuum is given in distinct parcels," and each residuary legatee was given particularly described property, so that under the rule that "it is to be presumed in such case that [the testator] had expressed all that each residuary legatee should take," as in the case of Loyd *v.* Loyd, 4 Bevan, 231, there cited, the lapsed described part of the residue went to the testator's next of kin. Accordingly, where in this case, contrary to the situation in the *Silcox* case, the residuary estate was given generally, without description of any property or parcel, to the four residuary legatees by name, and the legacies of two lapsed by their deaths without issue before the death of the testator, such shares of the personalty did not go to the next of kin or heirs of the testator, but to the other residuary legatees.

This construction accords with the manifest purpose of the Code, § 113-813, to distinguish between lapsed devises (of realty) and legacies (of personalty), without regard to whether such gifts are made in the residuary clause or elsewhere in the will; the former going to the heirs, with the exceptions previously stated, and the latter to the residuary legatees. Although the statute provides that the "legacy of personal property shall *fall* into the residuum," the language lacks significance for reasons already discussed, and the more so because immediately thereafter it is provided that the legacy shall *"go* to the residuary legatee." It can not be held that either the residuary clause or the remaining testamentary language

indicated any intention to take from the residuary legatees any lapsed shares of personalty which would go to them under the statute, since the only special devises or bequests were to the testator's wife, and the entire residuary estate was then given to the testator's own blood, his brother and sisters, without further reference to the wife and with no reference to her heirs, who now claim all of the residuary estate to the exclusion of the testator's kindred, following the widow's death soon after the testator died.

The will provided: "I will and bequeath to my wife, Willie, two horses and two cows. I direct she select them." The answer of the residuary legatees to the petition of the widow's heirs states, and it was undisputed, that the widow "died two days after the death of her husband, and had made no selection of said property." The court held that since the widow "did not select" this live stock, that property passed to the residuary legatees, the same as other personalty; and the plaintiff heirs of the widow excepted to this ruling. In *Hilton* v. *Sherman,* 155 *Ga.* 624, 628 (118 S. E. 356), the will provided that the executors furnish to the testator's wife "a home to be selected by her, and to be her property, at a cost of not exceeding five thousand dollars;" and the widow died without the selection or furnishing of any such home or any demand therefor. This court held that "such gift is absolute and unconditional; and failure of the wife to select such home during her life will not defeat said legacy, the right of selection of the home not being a condition precedent, the non-performance of which will defeat the gift." That ruling controlling the instant question, this legacy of live stock to the widow was not forfeited by her failure to make a selection before her death only two days after the death of the testator; but the legacy inured to the benefit of her administrator, a party plaintiff in this case.

*Judgment affirmed on the main bill of exceptions; affirmed in part and reversed in part on the cross-bill. All the Justices concur.*