### HILL *v.* HILL, administrator.

A devise (in a will executed either before or since the adoption of the Code of 1895) which was obviously and necessarily contingent when the will was made (such as a remainder in behalf of future children) is not, upon failure of the contingency, within the ordinary rule applicable to a void or lapsed devise; and the residuary devisee will take instead of the heir at law, unless the will contains special indication of a contrary intention on the part of the testator. The will in this case does not contain special indication of a contrary intention on the part of the testator; and consequently the reversionary and contingent interest not previously devised passed to the residuary devisee appointed by the will, and not to the heir.

No. 1374.　FEBRUARY. 10 1920.

Claim. Before Judge Morris. Cobb superior court. March 13, 1919.

On May 6, 1884, John W. Hill executed to his son, Edward Young Hill, a writing which all parties to the case treat as a deed. All parties likewise agree, at least for the purposes of this

·case, that the deed conveyed all the property therein described to Edward Young Hill for his life, with remainder to his children. On May 31, 1884, John W. Hill executed his will, and died soon after the making of it. His will was probated in solemn form on January 5, 1885. By separate items of his will the testator devised to his six children certain lands in severalty, with remainder to their children respectively. To his wife he devised certain lands for life, with remainder to his son, Benjamin H. Hill, with the exception of one tract of land which was devised to Edward Young Hill. Edward Young Hill was named as devisee in item six of the will. The land described in this item is the same as that described in the deed from John W. Hill to Edward Young Hill, of date May 6, 1884. Benjamin H. Hill was named as devisee in item nine of the will. Under this item Benjamin H. Hill took a life-estate only in all property devised to him, including the land in which an estate for life or widowhood had first been devised to testator's wife. The tenth item of the will, so far as material here, is as follows: "The residue of my property both ·real and personal, whatever and wherever it may be, including that given to my wife in the third article when her estate therein is over, all goes to my son Benjamin, all that has been willed and deed to my wife, both land and Big Shanty property, all goes to Benjamin except the little Babb mill place" (devised to Edward Young Hill). Elvira S. Hill, the wife of testator, and Edward Young Hill were appointed executors of the will and guardians and trustees for the minor children. The testator was survived by his wife, his daughter (Mrs. May D. Lunsford), and five sons, George, Edward Young, E. G., James M., and Benjamin H. At the time of the execution of the will and at the time of the testator's death, two children were married and four of them were single. None of them had a child or children. The executors named in the will qualified. The testator's wife died in 1892. Edward Young Hill died in 1918. He was survived by his widow, Mrs. Tinie Hill, as his sole heir at law. He never had any children. He was in possession of all the property mentioned in the deed and in the sixth item of the will at the time of his death. After the death of the surviving executor (Edward Young Hill), E. G. Hill was appointed administrator with the will annexed of the estate of John W. Hill. Upon application of the administrator (in possession) the ordinary

granted an order for the sale, of the land devised to Edward Young Hill for life and described in item six of the will. Benjamin H. Hill claimed the land. On the trial of the issue the court directed a verdict in favor of the administrator. To the direction of this verdict, and to the judgment rendered, thereon, the claimant excepted.

*D. W. Blair*, for plaintiff in error.

*J. Z. Foster, Mozley & Gann*, and *R. B. Blackburn*, contra.

GEORGE, J. (After stating the foregoing facts.) The facts upon which the legal rights of the parties depend are not in dispute. Edward Young Hill took only a life-estate in the specific land devised to him in item six of John W. Hill's will. He married, and his widow survived him, but no children were born to him. The question is whether the remainder or reversionary interest in the specific property devised to him in the sixth item of the will passed under the residuary clause (item ten of the will) to the residuary devisee, Benjamin H. Hill, the claimant, or whether it descended, as in case of intestacy, to the heirs at law of the testator. If the reversionary interest in the land did not pass under the residuary clause to the residuary devisee, then it necessarily descended to the heirs at law of the testator. Section 3907 of the Civil Code of 1910 provides: "A lapsed or void legacy of personal property falls into the residuum and goes to the residuary legatee. Ordinarily, real estate described in a lapsed or void devise descends to the heir; but under a devise necessarily contingent when the will was made, on failure of the contingency the residuary legatee will take." This section appeared first in the Code of 1895 as section 3331. If the will in this case had been executed since the Code of 1895, the question would be without serious difficulty. But the will was made and the testator died more than eleven years before the adoption of the Code of 1895, and, according to the decisions of this court, the will must be construed under the law as it existed at the time of the testator's death. *Bennett* v. *Williams*, 46 *Ga.* 399; *Munroe* v. *Basinger*, 58 *Ga.* 118; *Crawford* v. *Clark*, 110 *Ga.* 729 (36 S. E. 404); *Sumpter* v. *Carter*, 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274). It is insisted on behalf of the defendant in error that the provision contained in section 3907 of the Civil Code of 1910, by way of exception to the general rule that "real estate described in a lapsed or void devise descends to

the heir," was not the law of this State prior to the adoption of the Code of 1895. The section of the code is apparently based upon the decisions in two cases, to wit, *Williams* v. *Whittle, 50 Ga.* 523, and *Dillard* v. *Ellington, 57 Ga.* 567. The exception in the statute, or the provision stated by way of exception to the general rule, is based upon the decision in the case last cited. At page 592 of the opinion delivered by Judge Bleckley, it was said: "It is not certain that aid is needed from the residuary clause of the will, to pass the reversion into the surviving sister, as to the whole of the specific property. But if needed, we think that clause may be invoked. The failure of a remainder to become vested, which the testator must have known, and not merely may have known, might never vest, is not like the ordinary case of a void or a lapsed devise. When the testator created a remainder in favor of children unborn, he must have known that they might never be born, and hence that the remainder was necessarily contingent. On the state of facts which he knew to exist at the time the will was made, he knew that there was a reversion as to this specific property. But intending to leave none of his estate undisposed of, he proceeded to dispose of this reversion effectually in the residuary clause, if he had not already done so in the previous clause. When a reversion *may* be incident to a specific devise, the testator may be supposed not to have contemplated it; but when it *must* be incident, and can not possibly be otherwise, the presumption should be that he had it in mind, and that language used by him, sufficiently comprehensive to dispose of it, was used with that intent:" citing 1 Jarman on Wills, 591, 592, 593; 1 Man. & Sel. 300; 1 B. & Adol. 186; 6 Paige Ch. 600. The ruling of the court in that case is found in the seventeenth headnote, as follows: "A devise which was obviously and necessarily contingent when the will was made (such as a remainder in behalf of future children) is not, upon failure of the contingency, within the ordinary rule applicable to a void or a lapsed devise; and the residuary devisee will take, instead of the heir-at-law." It is said that this ruling and the opinion in support thereof are obiter dicta. In the sense that it may have been unnecessary to invoke the residuary clause of the will in that case in support of the ruling there made, the language is obiter, but the facts of the case authorized a decision upon the point. We will, however, examine the prior decisions of this court for the purpose

of showing, if we can, that the ruling made in *Dillard* v. *Ellington* is not in conflict with any prior ruling of the court, but, on the contrary, was the true law of the State in 1876 and at the time of the death of John W. Hill in 1884. In the case of *Silcox* v. *Nelson*, 24 *Ga.* 84 (2), decided in 1858, it was held: "A legacy lapsed does not fall into the residuum, where it is manifest, from the will, that the testator did not intend that the residuary legatees, from the nature of the bequests or devises to them, should take any part of a legacy." At page 90 of the opinion (by Judge McDonald) it was said: "Where the residuum is given in distinct parcels, as in this case, or to several as tenants in common, it is to be inferred that the testator did not intend that lapsed legacies should fall into the residuum, but it is to be presumed in such case that he had expressed all that each residuary legatee should take." The will in that case directed the sale of testator's property, both real and personal, except certain property specially bequeathed, and bequeathed a one-third portion thereof to a named school in the county of York, England. This particular legacy, it was contended, had lapsed because of the non-existence of the legatee named in the will. The decision clearly recognized the general rule that a lapsed legacy (of personal property) falls into the residuum and passes to a residuary legatee; but it was adjudicated that the case did not fall within the general rule, because of the contrary intention of the testator plainly manifested in his will. The court made no distinction between a lapsed legacy and a lapsed devise. The ground upon which the decision was made rendered it unnecessary for the court to note the distinction. This case was followed by *Hughes* v. *Allen* (1860), 31 *Ga.* 483. The opinion in that case was written by Judge Lumpkin. At page 489 he said: "The following propositions we hold to be true: That when the general legatee is residuary legatee, he is entitled, not only to what remains after the payment of debts and legacies, but also to whatever may, by lapse, invalid disposition, or other casualty, fall into the residue after the date and making of the will. Roper on Legacies, 1673; 1 Ves. Sen. 320; Russell & M. 258. That a residuary clause passes a lapsed legacy, and that which is intended to be the subject of bounty to another. And this rule laid down by Lord Cottenham (Roper, 1682) is founded upon the idea, not that it effects, in specie, what the testator intended, but because the residuary clause

is understood to be intended to embrace anything not otherwise effectually given. Because, as Sir Wm. Grant expresses it, the testator is supposed to give it away from the residuary legatee, only for the sake of the particular legatee, or, as it is sometimes expressed, the particular intent of the testator is made to give way to the general intent, to effectuate the plain purpose of the testator —not to die intestate as to anything belonging to him." That case dealt with a lapsed legacy, and it was adjudged that the personalty passed to the heirs at law of the testator, and not to his residuary legatees. The residuary clause in the will there under consideration gave to the legatees "all other property belonging to me not heretofore specified." The court held that a void bequest, or an ineffectual attempt to dispose of personalty, which amounts to no disposition at all, would go to the residuary legatee under a clause giving to such legatee "all the rest of my property not heretofore disposed of," but that the term "not heretofore specified" is a term of identification only. The decision was therefore placed upon the ground that the words in the residuary clause so narrowed the title of the residuary legatees as to exclude them from taking the lapsed legacies,—much the same principle upon which *Silcox* v. *Nelson,* supra, was decided. *Hughes* v. *Allen* was followed by *Word* v. *Mitchell* (1861), 32 *Ga.* 623, where it was ruled that "a legacy failing, either by lapse or because void at law, falls into the residuum and passes to the residuary legatee, and not to the next of kin." The will in this case disposed of both real and personal property, but again the distinction between a void devise (of land) and a void legacy (of personalty) seems not to have been made. The decisions cited in support of the ruling are all cases dealing with a lapsed legacy, and therefore the case can not be accepted as holding that a lapsed devise falls into the residuum and passes to the residuary devisee. The next case to which our attention has been directed is that of *Thweatt* v. *Redd* (1873), 50 *Ga.* 181, a case of a lapsed legacy. It recognizes the general rule that a legacy failing, either by lapse or because void at law, falls into the residuum and passes to the residuary legatee, and not to the heir, where there is no contrary intention expressed in the will. *Word* v. *Mitchell,* supra, was cited in support of this ruling. It was accordingly held that there were no words in that will which so narrowed the title of the residuary legatees as to exclude them from

taking the lapsed legacies, as in the case of *Hughes* v. *Allen*. Then followed the case of *Williams* v. *Whittle* (1874), 50 *Ga*. 523. This case draws a distinction between the rule in cases of lapsed or void legacies and in cases of lapsed or void devises, and announces the rule to be, in keeping with the general rule recognized by the English courts and followed almost invariably by the courts in this country, that a lapsed or void legacy (of personalty) falls into the residuum and passes to the residuary legatee, but that a void devise (of realty) descends to the heir. The general rule, codified in section 3331 of the Code of 1895 and carried forward as section 3907 of the Code of 1910, is clearly announced by Judge Trippe in the opinion in *Williams* v. *Whittle*. By the third item of the will in that case the testator devised two lots of land to a trustee for slaves. This devise was held void under the laws of this State. The contest was between the heir at law and the general residuary devisees. The case therefore fell within the ordinary rule applicable to a void or lapsed devise. The court was not called upon to decide whether a devise, necessarily contingent when the will was made, was, upon failure of a contingency, within the general rule applicable to a void or lapsed devise. This is clearly pointed out by Judge Bleckley in *Dillard* v. *Ellington*, (57 *Ga*. 593), and we agree with him that the distinction is evident between *Dillard* v. *Ellington* and *Williams* v. *Whittle*. At this point we call attention to the case of *Lane* v. *Patterson* (1912), 138 *Ga*. 710 (76 S. E. 47), relied upon by counsel for defendant in error. As will be noticed, the case was decided after the adoption of the Code of 1895. However, the will there considered was executed in 1885, and was probated in 1896. By the sixth and seventh items of the will in that case lands were devised to named trustees in trust for Lucinda V. for and during her life, and to her children living at the time of her death. The tenth item of the will was as follows: "I give, devise, and bequeath to my said daughter Lavinia, . . Josephine, . . Emma, . . in trust for Lucinda V., . . Emma, . . and to my son George, . . all my other lands not hereinbefore disposed of, of which I may die seized and possessed, for and during their natural lives, and at their deaths to their respective children living at the time of their death, to be divided among my said children, share and share alike." The testator died seized and possessed in fee of

other lands than those specifically devised in other items of his will, and which, subsequently to the death of the testator, were partitioned in kind among the devisees of the testator named in item ten of the will. Lucinda V. died unmarried and without children. It was accordingly held: "Item 10, in which was devised only all 'other lands' of which the testator might be seized and possessed, 'not hereinbefore disposed of,' did not purport to dispose of, nor dispose of, any of the lands previously devised to Lucinda V. in items 6 and 7, nor any reversionary interest therein." The decision did not refer to section 3907 of the Code of 1910 (Code of 1895, § 3331), or to the case of *Dillard* v. *Ellington.* The court was evidently of the opinion that item ten of the will was in the nature of a special devise, rather than a devise of the residuum of the estate, and that by item ten of the will the testator intended to devise only lands not previously dealt with in any other item of his will. Judge Bleckley, doubtlessly, and, as we think, correctly, supposed that the rule in force in this State in 1875 was the rule generally recognized by the English courts at the date of our adopting statute. Looking, therefore, to the general authorities we find this statement in 1 Jarman on Wills (6th Am. ed.), 636: "But as under the old law a testator could only devise the real estate to which he was actually entitled at the time of making his will, it follows that every residuary devise in such a will, however general in its terms, was in its nature specific, being in fact a specific disposition of the lands not before given, or, to speak more accurately, not before *expressed to be given* by the will. Thus, if a testator, being seized of Blackacre and Whiteacre, and having no other real estate, by a will made before 1838 devised Blackacre to A. in fee, and all the rest of the lands to B., B. took exactly that which he would have taken under a specific devise of Whiteacre, and no more; and, consequently, if the devise to A. failed, from its being devoted to charity, or from the devisee being dead at the time, or from his subsequent death in the testator's lifetime, B. could no more have taken, by virtue of his residuary devise, the interest so given, or intended to be given, to A., than he could have done under a specific devise of another property. But this general rule admitted of exception in certain classes of cases which will be here very briefly indicated. . . And a contingent remainder being an interest which had an inherent liability to fail,

as well through the event upon which it was limited not happening before the determination of the prior particular estate, as through its not happening at all, the interest, which upon a failure of the former kind was left undisposed of by the specific devise, was held to pass by a residuary devise in the same will." The author then adds: "The points embraced by the preceding positions can scarcely arise under wills which are subject to the act of 1 Vic. c. 26, s. 25," i. e., under wills made after 1838, thus clearly showing that he was dealing with wills made before 1838. In Van Kleeck v. Reformed Dutch Church (1837), 6 Paige's Ch. 600, 610, a leading case, Chancellor Walworth reaches the following conclusion: "The rule as to reversionary and contingent interests not previously devised, as now settled in England, appears to be, that a general residuary clause will carry all such interests to the residuary devisee, unless the will contains special indications of a contrary intention on the part of the testator. In other words, the legal presumption is that the residuary clause was intended to embrace such contingent and reversionary interests, in the absence of any other evidence of the testator's intention appearing upon the will itself when taken in connection with the situation of the testator's property and family at the date of the will." As noted, this case itself was decided in 1837, and the English cases reviewed and cited in support of the conclusion there reached by the Chancellor are: Doe v. Weatherby (1809), 11 East, 322; Wheeler v. Walroone, Alleyn, 28, 82 Eng. Rep. 898; Willows v. Lydcot, 2 Vent. 285, 86 Eng. Rep. 443; Hogan v. Jackson (1775), Cowp. 299, 89 Eng. Rep. 1096; Atkyns v. Atkyns (1778), 2 Cowp. 808, 98 Eng Rep. 1373; Ridout v. Pain (1747), 3 Atk. 485; Goodtitle v. Knot (1774), 1 Cowp. 43, 98 Eng. Rep. 958. Among the American cases cited by the Chancellor are Hayden v. Inhabitants of Stoughton, 5 Pick. 528; Brigham v. Shattuck, 10 Pick. 309. The opinion in Hayden's case was written by Mr. Justice Putnam. Certain lands were devised to the inhabitants of Stoughton, upon condition which the court held to be a condition subsequent. The testator appointed a residuary devisee. It was ruled that the contingent estate upon failure of the devisee to perform the condition subsequent passed to the residuary legatee. The case was decided upon the principle that the contingent estate was one that the testator must have had in contemplation as un-

disposed of by the previous clause of the will at the time such residuary clause was framed. The opinion in the case last cited was delivered by Chief Justice Shaw, and, with respect to the question here considered, follows the opinion by Mr. Justice Putnam in Hayden *v.* Inhabitants of Stoughton, supra. Cases, both English and American, might be multiplied (although cases both English and American may be found which serve to confuse the question) to the effect that the general rule in force at the time of our adopting act was that a residuary devise of real estate carries with it not only the real estate in which no interest is devised in the previous items of the will, but also every reversionary and contingent interest which, in the events contemplated by the testator as apparent from the will itself, is not wholly and absolutely disposed of, and which would be a proper subject of devise consistently with the declared intent of the testator, to adopt the language of the Chancellor in Van Kleeck *v.* Dutch Reformed Church, supra.

We conclude, therefore, that the exception to the general rule now contained in section 3907 of the Code of 1910, and as stated in *Dillard* v. *Ellington,* supra, was in force in this State in 1885. That the present case is within the exception, and not the general rule, is scarcely open to question. It is in principle the very case stated in *Dillard* v. *Ellington* as being within the exception. When the testator executed his will he had six children. Two of them were married, but none of them had children either at the time of the execution of the will or at the time of his death. The testator nevertheless created a remainder in specific property given to each of his children in favor of their children then unborn. The language of Judge Bleckley in *Dillard* v. *Ellington* is strictly applicable. "When the testator created a remainder in favor of children unborn, he must have known that they might never be born, and hence that the remainder was necessarily contingent. On the state of facts which he knew to exist at the time the will was made, he knew that there was a reversion as to this specific property. . . When a reversion *may* be incident to a specific devise, the testator may be supposed not to have contemplated it; but when it *must* be incident, and can not possibly be otherwise, the presumption should be that he had it in mind, and that language used by him, sufficiently comprehensive to dispose of it, was

used with that intent." The language of item ten is sufficiently comprehensive to dispose of this interest in remainder or reversion, unless the broad and comprehensive language, "the residue of my property both real and personal, whatever and wherever it may be," is restricted and qualified by the enumeration of the reversion in the property given by the testator to his wife after her estate therein had ended. Except in the residuary clause, the testator dealt with his estate by piecemeal. In every other item of the will he indicated by name, lot number, and acreage the lands devised. There is little ground to suppose that the testator believed that he had overlooked any particular tract of land. And so far as appears, he had not. The will itself shows that John W. Hill had already executed a deed to Edward Young Hill, conveying the property devised to him in item six of the will, for life, with remainder to his children. The will also shows that similar deeds had been made to all other devisees. Assuming that these deeds were delivered, the undisposed of reversion in the property was all that remained in the testator. It is manifest, however, that the testator at the time of the execution of the will wished to make assurance doubly sure, and this fact strengthens the conclusion that it was his intention to dispose of all his property, and every interest therein. He more than one time expressed the wish that no court or judicial officer should change or alter any provision of the will, authorize the sale or exchange of any property devised, or exercise any jurisdiction whatever over his estate, except "to appoint a better executor or trustee if needed." The statement, therefore, in the residuary clause that the residue of the testator's property *included* the reversion in the lands devised by him to his wife for life, is not sufficient to overcome the legal presumption that the residuary clause was intended to embrace the reversionary interest in the property devised to Edward Young Hill for life, under item six of the will.

The fact that the devisee of the life or limited estate specifically devised is also the general residuary devisee will not exclude him from taking the reversion in fee in the latter character. This seems to have been the opinion of the English judges, and upon that question we cite only the case of Hogan *v.* Jackson, 1 Cowp. 299, 98 Eng. Rep. 1096. The opinion was delivered by Lord Mansfield, and he observes: "But I do not think the objection of

itself sufficiently strong, to controul the manifest operation of the subsequent words, used by the testator in the residuary devise. It would be going a great way indeed, to lay it down as a general rule, that where a particular estate is given to a person in one part of a will, and the testator afterwards devises to him in more general words, that he shall not reap any benefit of such residuary devise.    Indeed, as to this objection, the case of Ridout *v.* Pain, 3 Atk. 486, is exactly in point.    There the testator, in the first instance, gave his wife only an estate for life, in part of his real estate, and afterwards bequeathed her the residue, &c.    The objection of inconsistency, now so strongly relied on, was there made; but Lord Hardwicke overruled it, and held the residuary clause carried the inheritance notwithstanding."    Upon writ of error in the House of Lords the judgment in Hogan *v.* Jackson was affirmed.

In view of the foregoing we are of the opinion that the verdict should have been for the claimant.

> *Judgment reversed.    All the Justices concur.*