21610. ERSKINE et al. v. KLEIN et al.

ARGUED APRIL 10, 1962—DECIDED JUNE 26, 1962.

*Stephens Mitchell, Mitchell, Clarke, Pate & Anderson,* for plaintiffs in error.

*John L. Westmoreland, John L. Westmoreland, Jr., Harry P. Hall, Jr., M. K. Pentecost, Jr.,* contra.

GRICE, Justice. The issue here is whether a testatrix, at her death, had a devisable interest in certain real property.

Leading up to this litigation were a series of events which may be summarized as follows.

James Lynch's will, probated in 1899, devised two tracts of real estate in the City of Atlanta to his daughter Mary Ann Erskine, for life, with remainder to her children who survived her and the descendants of any of her children who predeceased her, per stirpes.

In 1911, Mary Ann Erskine and her eight children, one of whom, Vincentia M. Erskine, was testatrix of the will here, executed an instrument purporting to convey that property to trustees for a period of 50 years. Two of the children were minors. The instrument recited that the real estate was very

valuable and likely to greatly increase in value and would be more valuable if kept together rather than disposed of severally and that the life tenant and the remaindermen believed it would be in the best interest of all concerned to convey their interests to trustees. The conveyance was upon the following conditions, limitations and uses: The net income from the property or any reinvestment to be paid to Mary Ann Erskine during her lifetime, and after her death, in equal amounts to her children as long as all of them were in life; upon the death of any of her children subsequent to her death, leaving a child or children surviving, the share of income that would have gone to the deceased parent had he or she continued in life to be paid to the surviving child or children, the property share being held and disposed of as though the parent had continued in life; upon the death of any of the life tenant's children subsequent to her death, leaving no children surviving, but leaving a husband or wife surviving, so much of the share of income as the deceased by will designated, to be paid to the surviving husband or wife for life, the property share itself to go to brothers and sisters of the deceased, or if no will such share both of income and property to go to the brothers and sisters of the deceased, share and share alike, the child or children of a deceased brother or sister to stand in the place of a deceased parent; and at the end of 50 years the trustees to sell the property, if not previously disposed of, and distribute the net proceeds "to parties of first part [grantors] or their descendants entitled thereto at that time under said Will [James Lynch's] and the rules of law governing inheritance from such descendants." It recited that, during the 50 years ". . . no sale to be made of the property or any part of it unless it can be sold for a sum which put at interest of 4% will yield an income double the lease or rental value of the property sold, but provided, that by unanimous consent in writing of all [grantors] it may be sold at a price fixed by them."

The 1911 agreement also provided that, if any of the life tenant's children should predecease her, leaving a child or children surviving, or if her minor children should refuse to ratify the agreement upon reaching their majority, this conveyance to trus-

tees would be affected only as to their interests and would continue binding as to all the other parties. In the event of the life tenant's children predeceasing her, leaving a child or children surviving, it authorized the trustees to purchase or make settlement for such interest "in such way and manner as may be authorized by a court of competent jurisdiction."

In 1922 Mary Ann Erskine died, leaving surviving her eight children who were parties to the 1911 agreement. Subsequently several of those children died and each, *except Vincentia Erskine*, the testatrix in the instant case, left one or more descendants.

In 1960 Vincentia Erskine died and her will purported to devise her share of the Lynch property to her sister, Elizabeth Erskine, for life, with remainder to her nephew, Robert Erskine Cline.

In 1961 these two devisees under Vincentia Erskine's will filed a petition in the Superior Court of Fulton County against the beneficiaries and the trustees of the 1911 agreement seeking a declaratory judgment as to whether that agreement violated the rule against perpetuities and, if so, whether it was valid for the first 21 years of its existence or was void from its beginning, and a declaratory judgment as to the present interests of those entitled to take under the will of James Lynch. Their petition also prayed that the trustees be enjoined from dividing or selling the property encompassed by the agreement and for general relief.

Answers were filed by the defendants. Jury trial was waived by all parties and certain stipulations were made. Upon the trial, judgment and decree favorable to the defendants was entered. Reciting that "The evidence was not in dispute and was fully set forth in the petition and the exhibits attached thereto," it held that the 1911 agreement was "a valid instrument conveying title to the real property therein described and that the grantors had the legal right to enter into the . . . [agreement] and that [it] should be carried out in accordance with the terms, conditions and provisions thereof, and that the said property should be sold as provided therein and the proceeds of said sales be distributed . . . among the bene-

ficiaries entitled to receive the same." It further held "that under the terms, conditions and provisions of said instrument . . . Vincentia Erskine did not have the right, at the time of her death, to dispose of any interest in the real property, as provided in [the instrument], and that no interest in the real property . . . passed under [her] will . . . and that her one-eighth (⅛) interest in the real property or the proceeds of the sale of the same, in accordance with the terms, conditions and provisions of said instrument . . . passed, at the time of her death, to the remaining living children of Mary Ann Erskine in accordance with the provisions of said [instrument] . . ." The judgment then directed the share to be distributed to each of Mary Ann Erskine's living children and descendants of deceased children.

This judgment is assigned as error.

The ultimate question here is whether Vincentia Erskine, at the time of her death in 1960, had a devisable interest in the real property which James Lynch had willed to his daughter Mary Ann Erskine and her children. The 1911 agreement executed by Mary Ann Erskine and her children holds the answer to that question and we must, therefore, determine the effect of that agreement.

1. The first step in that determination must be a finding as to the precise interests James Lynch's will gave Mary Ann Erskine and her children, parties to the 1911 agreement, in the property which was the subject matter of the agreement.

The devise was to "my daughter, Mary Ann Erskine . . . for the period of her natural life" and ". . . at her death . . . to go to and become the property in fee simple, of her children who survive . her and the descendants of any child or children of hers who may not survive her—Such descendants of child or children to take per stirpes, and receive what would have been the parents share had such deceased child of my said daughter been her survivor; but no descendants, except those in life at the death of my said daughter shall share in said property. . ."

Thus, Mary Ann Erskine received a life estate and her children received contingent remainders. The remainder interests of her

children were contingent because each child's interest was conditioned upon his or her surviving the life tenant, thus creating uncertainty as to the persons who would finally take. A contingent remainder is defined as ". . . one limited to an uncertain person, or upon an event which may or may not happen." *Code* § 85-703. For application of that definition, see *Britt v. Fincher*, 202 Ga. 661 (5) (44 SE2d 372). The stipulation of the parties that Mary Ann Erskine took a life estate "with a vested remainder in said properties to her children who survived her and to the descendants of deceased children" cannot prevail. While parties may stipulate as to facts, they cannot by stipulation change the law.

Contingent remainders and life estates being alienable, they could be the subject matter of a conveyance to trustees by Mary Ann Erskine and her children.

2. Next, we must ascertain the nature and validity of the 1911 agreement.

Was it, as contended by the defendants, an agreement among tenants in common not to partition; or was it, as contended by the plaintiffs, an attempt to create a trust? In our view it was the latter. The essential elements of a trust were present. There was a conveyance of property by grantors possessing alienable interests, to persons for the benefit of other named persons and the purposes, conditions and uses of the conveyance are stated. "Estates may be created not for the benefit of the grantee, but for the use of some other person. They are termed trust estates." *Code* § 108-101. From the language of the instrument it is apparent that the intention of the grantors was to create a trust.

But what kind of trust was attemped? Was it a trust for the improvement of property, authorized by *Code* §§ 108-601 et seq. (Ga. L. 1899, p. 57) and therefore governed by the provisions of those sections as to duration, beneficiaries and the like; or was it a regular trust, subject to general trust law? *Code* §§ 108-601 et seq. contemplate, as one of the primary features of the trust there authorized, transferability of the shares or interests of the beneficiaries, while it is obvious that the parties to the instrument in question here were trying to avoid just

that. Also, *Code* § 108-601 provides for a trust of 25 years duration and allows a renewal clause for a like period. The instrument here stated its term to be "for fifty years." Not complying with the statutory authorization for trusts for the improvement of property, the 1911 agreement must be held to be a trust subject to the rules governing the validity and efficacy of trusts generally.

(a) Thus we come to the question whether the 1911 agreement violated the rule against perpetuities, as contended by the plaintiffs.

The rule against perpetuities (*Code* § 85-707) is concerned with remoteness of vesting. Here there is no problem of vesting since the grantors are left with a *reversion*. The conveyance, containing the express provision that at the end of 50 years the property was to be sold and the proceeds distributed to the grantors "or their descendants entitled thereto at that time under said Will [James Lynch's] and the rules of law governing inheritance from such descendants," is, in effect, the conveyance of a legal estate for 50 years, leaving a reversion in the grantors. The rule against perpetuities has no application. "As vested remainders are not subject to the rule against perpetuities, it follows that the rule against perpetuities does not apply to reversions. The logical deduction from this conclusion is that a grantor or a testator may create a vested estate for any number of years, and such estate will not be destroyed by the rule against perpetuities. For illustration, a testator or a grantor may create a present estate to endure for any number of years, either more or less than one thousand years, provided such estate is followed by a reversion to the maker of the instrument, or to his heirs, or by a vested remainder in fee." Redfearn, Wills and Administration of Estates, p. 287, § 165. See also, 41 Am. Jur. 74, Perpetuities and Restraints on Alienation, § 29, and 70 CJS 589, Perpetuities, § 12.

The fact that if any of the remaindermen children of Mary Ann Erskine died before the 50 years expired the instrument provided for their shares to go to other persons does not create a gift over. It merely expresses the direction as to whom the reversion should go in such event—something which could have

been done by will had they elected. Also, the fact that the reversion would not be in the same property constituting the original trust res but would be in the proceeds from the sale of that property or property bought with those proceeds, is of no import. Whatever was substituted for the trust property would stand in its place and the grantors would have a reversion in the substitute to the same extent they would have had in the original property. Cf. *DeVaughn v. McLeroy*, 82 Ga. 687 (10 SE 211).

The case of *Fuller v. Fuller*, 217 Ga. 316 (122 SE2d 234), cited by the plaintiffs, is distinguishable since there the trust was followed by a gift over to the settlor's children, not by a reversion.

(b) The plaintiffs also contend that the 1911 agreement was invalid in that it was an illegal restraint on alienation. We do not agree.

Here, we are not considering a restraint on the alienation of a fee simple where the restraint would be repugnant to the estate granted, but rather, a restraint on the alienation of an estate for years. The grantors in this agreement contracted for the return of their property or its equivalent upon the expiration of the specified period of time. The restraining provisions were valid in order to protect the grantors' reversionary interests. See in this connection, *Cowart v. Singletary*, 140 Ga. 435, 443 (79 SE 196); 41 Am. Jur. 117, Perpetuities and Restraints on Alienation, § 78. The fact that the trustees were given the power to sell the trust property during the 50 years under certain conditions and were directed to sell it at the end of the 50 years does not enlarge the estate granted. "Generally, a trustee takes an estate as large and extended as the necessities of the trust require, *and no more.*" *Code* § 108-401. (Italics ours.) Here, that was an estate for years.

(c) The third important checkpoint we must consider in arriving at the validity of the 1911 agreement is whether, under the law in effect at that time, there was any ground to support this trust, i.e., whether it was executed or executory. This feature was not included in the issues of law set forth in the original briefs and oral arguments, but, upon our consideration, became manifest. Accordingly, counsel were invited to submit

briefs upon this question. It must be considered since the prayers of the petition included one for determination of the present interests of those entitled to take under the will of James Lynch, thereby invoking the effect of the 1911 agreement.

Our Code of 1910 provided that "Trusts are either executed or executory. In the former, everything has been done by the trustee required to secure the property, or to render certain the interest of the beneficiaries, and all that remains for him to do is to preserve the property and execute the beneficial purposes. In executory trusts, something remains to be done by the trustee, either to secure the property, to ascertain the objects of the trust, or to distribute according to a specified mode, or some other act, to do which requires him to retain the legal estate." Code 1910, § 3736 (now *Code* § 108-111). See, in this connection, *Clark v. Baker,* 186 Ga. 65 (1) (196 SE 750).

The Code of 1910 also provided that "In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary according to the terms and limitations of the trust." Code 1910, § 3737 (now *Code* § 108-112).

, Thus, unless there was some basis for this trust remaining executory, as stated in § 3736 above (now *Code* § 108-111), it became executed immediately as to the sui juris beneficiaries and as to each of the minors as he reached his majority and became "capable of taking and managing property in his own right." See *Thompson v. Sanders,* 118 Ga. 928 (45 SE 715).

However, the rule in this State is that a trust in which contingent remainders follow a life estate and are embraced by the trust will remain executory until such time as the persons who are to take the remainders can be ascertained. *George P. Thomas & Co. v. Crawford,* 57 Ga. 211 (1); *Cushman v. Coleman,* 92 Ga. 772 (1) (19 SE 46); *Macy v. Hayes,* 163 Ga. 478 (3) (136 SE 517).

Applying that rule to the instant situation, we conclude that this trust remained executory until the life tenant died in 1922 and those entitled to the remainder interests in the trust property became ascertainable. At that time the interests of those

so entitled became absolute and, there no longer being any basis for the trust, the Statute of Uses, as embodied in §§ 3736 and 3737 (now *Code* §§ 108-111 and 108-112) operated to execute it, merging the legal title with the equitable in the beneficiaries. See *Knorr v. Raymond,* 73 Ga. 749, for a discussion of the Statute of Uses, its operation and effect, as of force in this State.

Thus, in 1922 legal title of her share of the Lynch property returned to Vincentia Erskine.

3. The 1911 trust having become executed at the death of the life tenant in 1922, Vincentia Erskine was not bound by its terms. She was possessed of the entire title to her share of the property and could dispose of it by her will.

4. We cannot deal with the contention of the defendants that the plaintiffs are now estopped to attack the 1911 agreement by reason of their having acquiesced and acted under it for such a long period of time. We cannot do so because there is no evidence in the record before us upon which that contention may be considered. While the defendants' answers pleaded that contention, the plaintiffs' petition distinctly alleged that "No benefit came to Vincentia Erskine nor to petitioners by reason of the execution of the [1911 agreement] . . . nor did any detriment result to any of the defendants . . . from the trustees under said instrument," and the final judgment and decree recited that "The evidence was not in dispute and was fully set forth in the *petition and the exhibits* attached thereto." (Italics ours.) Thus, it does not appear that the trial judge had any evidence before him as to estoppel when he heard the case.

5. For the foregoing reasons the judgment of the trial court is reversed, with directions that it mold a judgment and decree in accordance with the rulings made herein.

*Judgment reversed with directions. All the Justices concur.*