34694. CAPERS et al. v. CAMP.

MARSHALL, Justice.

This is a proceeding in rem against all the world to establish title, brought pursuant to the provisions of Code Ann. §§ 37-1411 through 37-1423 (Ga. L. 1966, pp. 443-447).

Joseph G. Camp, Sr., died in 1965, leaving (by Item 5 of his will) his home in Dillard, Georgia, to his son, Joseph G. Camp, Jr., and his son-in-law, Claude (spelled "Claud" in the will) V. Capers, to be held by them for 25 years "for the use of their families and my grandchildren as a summer vacation place." Item 5 of the will further provided that, at the end of the 25 years, if the devisees or their heirs desire to sell the property, it may be sold and the proceeds divided among both devisees and their heirs, per stirpes. Each devisee was directed to be responsible for one half of the taxes and upkeep of the property.

Devisee Joseph G. Camp, Jr., died intestate in 1966, survived by his son, Joseph G. Camp, II, and his daughter, appellee Barbara Camp. From 1967 until 1975, the property was maintained for a while by devisee Capers, according to his contention, then apparently by

guardianship funds of the appellee and later by funds of the appellee, who reached majority in 1971. (The special master's hearing, in which the facts were developed, was not transcribed.)

In 1975, the appellee brought the present action in superior court to have fee simple title to the property vested in herself. As prescribed by Code Ann. § 37-1413 (Ga. L. 1966, pp. 443, 444), the case was submitted to a special master, who made findings of fact, inter alia, that the petitioner had gone into possession of and maintained the property since the death of her grandfather, and that devisee Capers had, by certain letters, renounced all interest in the property and demanded no accounting. The special master's conclusions of law were that the bequest as to the grandchildren of Mr. Camp, Sr., was void as too remote; that this left the two devisees as tenants in common; and that the petitioner had fee simple title by prescription by virtue of devisee Capers' renunciation of any interest in the property, a quitclaim deed of the petitioner's brother's interest in the property to her, and her adverse possession for seven years, under Code § 85-407.

The adverse parties (devisee Capers and his heirs apparent) filed an appeal in superior court from the findings and conclusions of law of the special master, requesting a de novo hearing. The court found no authorization for such an appeal, citing Code Ann. § 37-1417 (Ga. L. 1966, pp. 443, 446), and entered a decree vesting fee simple title in the petitioner, from which the adverse parties appeal.

1. In the first enumerated error, it is contended that the petition should have been dismissed as defective, for failure to file therewith proof of a probated will, administrative deed, or other recorded instrument conveying an interest in the property from the petitioner's deceased father to her, as is alleged to be necessary according to the provisions of Code Ann. § 37-1412 (Ga. L. 1966, p. 443). That statute requires the filing with the petition of, inter alia, "a copy of the immediate instrument or instruments, *if any,* upon which the petitioner's interest is based." (Emphasis supplied.) The appellee has filed all documents of title available as exhibits to her

petition, i.e., her grandfather's will, letters of co-devisee Capers allegedly renouncing his interest in the property, and a quitclaim deed to her brother's interest. The appellants' answer admitted the allegation of the complaint that the petitioner and her brother are the sole heirs of co-devisee, their father, Joseph G. Camp, Jr., and in their brief in this court they concede that there are no documents of administration of the estate of Camp, who they acknowledge died intestate. This enumeration is without merit.

2. In the second enumerated error, it is contended that the special master erroneously construed the will of the petitioner's grandfather as an attempt to create a testamentary trust for the use of the devisees' families and the testator's grandchildren, whereas, it is contended, the will actually gave the two devisees a legal fee (the 25-year term plus the unrestricted power to sell), with no contingent future interest, so that the devisees were tenants in common. The appellants then urge that (assuming that the petitioner and her brother inherited an interest in their father's estate), by virtue of the brother's quitclaim deed the petitioner and devisee Capers are now tenants in common.

The result is the same under the appellants' and the special master's theories. Neither theory, however, is correct. Item 5 did attempt to create a testamentary trust, but, as pointed out in the special master's conclusions of law, the trust was void, because it violated the rule against perpetuities.[1] Since the trust was void, the real property sought to be devised in Item 5, descends to the heirs of the testator, not to the two individuals designated in the will to hold title for the use of themselves and others. Code Ann. § 113-813. "Under the Code, § 113-813, which follows the common-law rule abrogated in many States, 'ordinarily real estate described in a lapsed or void

---

[1]The trust contained only one specification of the time for the trust to continue, to wit, 25 years, which is unrelated to the life of any person referred to in the will. Code Ann. § 85-707. *Fuller v. Fuller,* 217 Ga. 316, 323 (2) (122 SE2d 234) (1961).

devise shall descend to the heir' of the testator. *Williams v. Whittle,* 50 Ga. 523, 525. As to a lapsed devise (of real estate), the rule is thus the same in passing the property to the heirs of the testator, whether the lapse related to a special devise or related to part of the residuary clause itself. See 69 C. J. 1079-1081, §§ 2315, 2316. To this rule there are three exceptions: (1) manifestly the rule is different where the will provides a contrary disposition as to such a lapsed devise; (2) where the devise was 'necessarily contingent when the will was made, on failure of [which] contingency the residuary legatee shall take' (Code, § 113-813; *Dillard v. Ellington,* 57 Ga. 567 (17), 593), 'unless the will contains *special* indication of a contrary intention on the part of the testator' *(Hill v. Hill,* 149 Ga. 741 (101 SE 121, 102 SE 151, 10 ALR 1514, 1529, note);and (3) where the devise is not made to one person or to several named persons as *individuals,* but is plainly made to the devisee and others as members of a *class,* in which case the death of one merely eliminates the deceased from the class or group of beneficiaries, the survivors of whom will take the gift proportionately to their number when the devise vests. *Toucher v. Hawkins,* 158 Ga. 482, 484 (123 SE 618); 28 R.C.L. 260, § 233; 2 Schouler on Wills (6th ed.), 1167, 1168, § 1011." *Snellings v. Downer,* 193 Ga. 340, 344 (2a) (18 SE2d 531) (1942). It is apparent that none of the three exceptions to the rule stated applies. See also 1 Redfearn, Wills and Administration in Ga. 394, § 156 (3rd Ed.).

The heirs of the testator were Joseph G. Camp, Jr., a son, and the children of a deceased daughter (who predeceased the testator), Ann Capers, Clare Capers Toy, Nell Williams Capers, and Joe G. Capers. Claude V. Capers, the children's father, was not an heir. Joseph G. Camp, Jr., died after the death of the testator, and left as his heirs Joseph G. Camp, II, and Barbara Camp. Since Joseph G. Camp, II, quitclaimed his interest in the property to Barbara Camp, she became owner of a one-half undivided interest, and the Capers children owned the other one-half undivided interest as tenants in common.

The interpretation of Item 5 of the will by the special master was error.

3. In the third enumeration of error, it is contended that the portions of the special master's conclusions of law wherein the special master concluded that Barbara Camp went into possession of the Dillard property with the letters from Claude V. Capers as color of title and held said property in exclusive possession for over seven years thereby establishing title by prescription, were erroneous conclusions of law. We agree. Even though we have held in Division 2, supra, that Claude V. Capers acquired no title to the Dillard property which he could convey or renounce, it is conceivable that the letters could constitute color of title provided the letters met the requirements for color of title. We hold that the letters in question did not constitute color of title. In Powell on Actions for Land 340, § 295, color of title is defined as follows: "Color of title is 'a writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used — a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law.' " In addition, Judge Powell adds: "To entitle the possessor to the benefit of his color of title, there must be a writing; it must purport to convey the property to the possessor (to him holding either the corporeal or the legal possession), and not to others under whom he does not hold; it must contain such a description of the property as to render it capable of indentification [sic], and the possessor must in good faith claim the land under it." Id., p. 341. In *City of Barnesville v. Stafford,* 161 Ga. 588, 591 (131 SE 487) (1926), color of title is defined also. "Color of title is any writing which defines the extent and character of a claim to land, with parties from whom it may come and to whom it may be made. *Beverly v. Burke,* 9 Ga. 440 (54 Am.D. 351); *Field v. Boynton,* 33 Ga. 239 (3); *Burdell v. Blain,* 66 Ga. 169; *Street v. Collier,* 118 Ga. 470 (45 SE 294)." It is obvious from the content of the two letters of Claude V. Capers that, at best, the letters purport to disclaim ownership of the property, not to convey title to anyone, and not to the appellee. In a footnote, Judge Powell lists a number of examples of instruments held to be capable of operating as color of title. It is interesting to note that the list includes a letter purporting to give title

described in *Wooding v. Blanton,* 112 Ga. 509, 510 (37 SE 720) (1900). The letter in question, however, contains the following: " 'Valdosta, Ga., Feb. 8th, 1882. Mr. Franklin Nelson, Moultrie, Colquitt County, Ga.

" 'Dear Sir: In looking over my papers some time ago, I came up with the Commissioners' deed to two (2) town lots in the town of Moultrie, which I enclose you, No. 4 & 5, in Block "E." One of the two I sold to Col. Savage before the war, which must have been next to the place he settled. In the other, I herewith surrender any rights and title therein to yourself or wife, just as you may choose. I herewith enclose a deed to you, hoping it may reach you safely, find you and family all well; and please give them my best respects. Yours Most Respefty [sic], Benj. L. Wooding.' " It is obvious that Wooding was conveying title to Nelson or wife.

The appellee urges in her brief that the testator's will constituted "additional" color of title on which she based prescriptive title. There is no merit in this argument, since possession held under a claim of right is limited by the terms of the instrument upon which the claim is based. See Powell on Actions for Land 339, § 294; *Patellis v. Tanner,* 199 Ga. 304, 313 (34 SE2d 84) (1945); *City of Barnesville v. Stafford,* 161 Ga. 588, supra. Barbara Camp was mentioned by name in only one portion of the testator's will, that being as one of several grandchildren of the testator as a beneficiary of a testamentary trust created to provide a college education for the grandchildren. The will afforded the basis for no claim of right as to the Dillard property for appellee whatsoever. The third enumeration of error was meritorious.

4. Since Divisions 2 and 3, supra, hold that the special master committed reversible error, the trial judge erred in the judgment and decree of December 13, 1978, which adopted the findings of fact and conclusions of law of the special master, as urged in the appellant's fifth enumeration of error.

5. As to the fourth enumeration of error, which contends that the trial judge erred in his order of October 25, 1978, which denied the appellants' "appeal to return of special master" addressed to the trial court, we know of no provision for such an appeal in the statute creating this

procedure. See Quia Timet Act of 1966, Code Ann. § 37-1411 et seq. (Ga. L. 1966, pp. 443-447). This enumeration is not meritorious.

6. Since the appellee represented that she expended funds for the upkeep of the property and collected rents thereon, and Claude V. Capers contended that he also expended funds for maintenance, the case must be remanded for an accounting between the parties.

*Judgment reversed and remanded with direction. All the Justices concur, except Jordan and Hill, JJ., who concur in the judgment only, and Undercofler, P. J., who dissents.*

ARGUED MARCH 13, 1979 — DECIDED JULY 2, 1979.

*C. Lloyd Clay,* for appellants.
*Frank Sutton, R. Bruce Russell,* for appellee.

UNDERCOFLER, Presiding Justice, dissenting.

The majority opinion does not state whether the trust is void because the estates do not vest within the Rule Against Perpetuities or the duration of the trust exceeds the limits of the rule. The opinion relies on *Fuller v. Fuller,* 217 Ga. 316 (2) (122 SE2d 234) (1961), which also does not specify the basis for its holding. However, a review of the *Fuller* record shows the trust clearly violated the rule with regard to the vesting of the estates.[1] Furthermore, the citations supporting the conclusion in *Fuller* involved the vesting of estates which violated the rule.

---

[1] "I direct that my estate be liquidated and closed not later than twenty-five (25) years after my death by disbursing the residue to my children then in life or child or children of any of my deceased children. The grandchildren shall be given only the share their deceased parents would have received in distribution had said parent or parents been living at the time of said final distribution." Record in *Fuller v. Fuller,* supra.

If the ruling of the majority here is that the estates violate the rule, I must disagree.[2] The son and son-in-law clearly have life interests in the property and are the measuring lives. Whatever the remainder interests may be, they clearly vest at the death of the measuring lives. There are no contingent remainders.

If the ruling of the majority here is that the duration of the trust estate is void because it violates the rule, I must disagree. *Fuller,* as pointed out above, does not address duration of the trusts and the case is concerned with contingent remainders which violate the rule. Furthermore, Georgia's Rule Against Perpetuities (Code Ann. § 85-707) is said to be the common law rule which applied only to the vesting of contingent estates, not duration of trusts. *Fuller* was applied to the duration of a trust in *Burton v. Hicks,* 220 Ga. 29 (136 SE2d 757) (1964). It has been criticized. See 17 Mercer LR 208, 212 (Fall, 1965). The ruling is contrary to the general rule in other jurisdictions. 24 EGL 25, Perpetuities, § 17; Pindar, Ga. Real Est. Law 282, § 7-151. Furthermore, eight months after the *Fuller* decision this court decided *Erskine v. Klein,* 218 Ga. 112 (126 SE2d 755) (1962), which upheld a trust for 50 years where the remainders vested within the Rule. It was stated, "As vested remainders are not subject

---

[2]"I give, devise, and bequeath my home in Dillard, Georgia unto my son, JOSEPH G. CAMP, JR., and my son-in-law, CLAUD V. CAPERS, to be theirs jointly and to be held by them for a period of twenty-five (25) years for the use of their families and my grandchildren as a summer vacation place. At the end of the said twenty-five (25) years, if my son and son-in-law desire to sell said property or their heirs desire to sell the said property, then the same may be sold and the proceeds divided among my son and his heirs and my son-in-law and his heirs, per stirpes. I further direct that my said son, JOSEPH G. CAMP, JR., and my son-in-law, CLAUD V. CAPERS, shall be responsible for the taxes and upkeep of both the above properties, each as to one-half (1/2) thereof, during the time said properties are owned by them." Record in *Capers v. Camp.*

to the rule against perpetuities, it follows that the rule against perpetuities does not apply to reversions." *Fuller* was distinguished ". . . since there the trust was followed by a gift over to the settlor's children, not by a reversion." From the facts of the *Fuller* case the only logical conclusion is that this court recognized that the void remainder in *Fuller* was a contingent remainder barred by the rule. Also, three weeks later this court decided *Lanier v. Lanier,* 218 Ga. 137 (126 SE2d 776) (1962) in which CJS was cited with approval that ". . . beneficial interests under or after a trust, which are vested immediately or will necessarily vest, if ever, within the period prescribed by the rule, are good, even though the trust may continue beyond such time . . ."

In my opinion *Fuller* has been misinterpreted and *Burton* is erroneous. I dissent here because the majority perpetuates the error.